R-T LEASING CORPORATION,
Plaintiff,

v.

ETHYL CORPORATION, Defendant.

No. 79 Civ. 1720.

United States District Court,
S. D. New York.

Nov. 30, 1979.

Easton & Echtman, P. C. by Irwin Echtman, New York City, for plaintiff.

Cahill, Gordon & Reindel by Denis McInerney, R. Kevin Castel, New York City, for defendant.

MEMORANDUM OPINION

MOTLEY, District Judge.

R-T Leasing Corp., (R-T Leasing) has moved pursuant to Canons 4 and 9 of the ABA Code of Professional Responsibility to

disqualify the law firm of Cahill, Gordon & Reindel (Cahill) as counsel for Ethyl Corporation (Ethyl) in an action currently pending before this court. In the alternative, R–T Leasing has requested additional discovery, to culminate in a hearing, on the issue of disqualification. This motion stems from R–T Leasing's pending suit against Ethyl for alleged breaches of leases for railroad transport cars.

The grounds for Cahill's disqualification as advanced by R–T Leasing are that Cahill's previous legal representation of The Overmeyer Co., Inc., (TOC), a minority shareholder in R–T Systems, Inc., (R–T Systems) (the parent corporation of R–T Leasing) in a series of transactions from 1970 to 1973 was tantamount to legal representation of R–T Systems and R–T Leasing, its subsidiary. As a result of Cahill's alleged role as counsel to R–T Systems, R–T Leasing contends that Cahill's representation of Ethyl in the present action, in opposition to the interests of its purported former client, violates Canon 4, which mandates preservation of the secrets and confidences of present and former clients, or, at minimum, contravenes Canon 9, which forbids even the appearance of impropriety. Pointing to the standard remedy of disqualification of attorneys whose conduct falls below those strictures set forth in Canons 4 and 9, R–T Leasing has demanded disqualification of Cahill to obviate the possibility, no matter how remote, of disclosure of or unconscious reliance upon (to R–T Leasing's ultimate detriment) confidences imparted to Cahill during the course of the alleged prior representation of R–T Systems.

In opposition to the motion, Cahill unequivocally disclaims any prior legal representation of R–T Systems and stresses with some vehemence that its representation of TOC in scattered arms-length transactions with R–T Systems may not by any stretch of the imagination be construed as actual or even a *de facto* representation of R–T Systems. Since proof of a prior attorney-client relationship is necessary for a party to invoke the directives of Canon 4, Cahill contends, a relationship that Cahill claims does not exist on the facts of the instant case,

Canon 4 cannot be used as a basis for Cahill's disqualification. Furthermore, Cahill argues that not a scintilla of evidence exists to support a finding that Cahill's relationship with Ethyl exhibits a miasma of impropriety even assuming the absence of a bona fide attorney-client relationship. As a coup de grace to R–T Leasing's insinuations of the existence of a web of impropriety associated with Cahill's present representation of Ethyl in the action before this court, Cahill argues that even if it is assumed *arguendo* that an attorney-client relationship existed between Cahill and R–T Systems, R–T Leasing has neglected to establish the necessary element in all disqualification motions—that a substantial relationship existed between the subject matter of the prior representation and the present proceedings.

■ For the reasons stated below, this court is persuaded by the evidence presented in the briefs, affidavits and also by the argument at the hearing on this motion that the directives of Canons 4 and 9 are inapplicable to the facts of the case at hand, thus furnishing no basis for Cahill's disqualification as counsel for Ethyl. Once the smoke has cleared, it is patently obvious to the court that no attorney-client relationship existed between R–T Leasing and Cahill to permit R–T Leasing to assume the position of an aggrieved former client in the present action, gravely concerned with the possibility of Cahill's reliance on or disclosure of confidential communications shared in the course of the prior attorney-client relationship, a possibility to be foreclosed only by Cahill's disqualification. The motion to disqualify is hereby denied.

*Canon 4*

■ Canon 4 of the ABA Code of Professional Responsibility provides that "[A] lawyer should preserve the confidences and secrets of a client." Canon 4, applying, of course, to the relationship between an attorney and a present client, has been construed by the courts to prevent disclosures of confidential communications of former

clients, particularly if the attorney is so inclined to undertake representation of a party in an action adverse to the interests of a former client, who is also a party in the same action. *Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562 (2d Cir. 1973), following *T. C. Theatre Corp. v. Warner Bros. Pictures, Inc.*, 113 F.Supp. 265 (S.D.N.Y.1953). In other words, an attorney may be disqualified from appearing on behalf of an adversary to a former client in subsequent legal proceedings.

■ Respectful of the sanctity of an attorney's duty of loyalty to a client for all matters and confidences disclosed during the course of their professional relationship, a relationship that carries with it a presumption of confidentiality, the *T. C. Theatre* court first formulated a test for disqualification of attorneys who violate the directives of Canon 4 (formerly Canon 6).

He [the attorney] is enjoined for all time, except as he may be released by law, from disclosing matters revealed to him by reason of the confidential relationship. Related to this principle is the rule that where any substantial relationship can be shown between the subject matter of former representation and that of subsequent adverse representation, the latter will be prohibited. 113 F.Supp. at 268.

Thus, the test for disqualification of an attorney is two-fold: first, an attorney-client relationship must have existed between the attorney and the adverse party in the present suit and, second, and most important, a substantial relationship must exist between the issues involved in the prior representation and those of the action in which disqualification is sought. *See NCK Organization Ltd. v. Bregman*, 542 F.2d 128 (2d Cir. 1976).

The *Emle* court, elucidating the two-pronged test of *T. C. Theatre, supra*, dispensed with any notion that a court, in disqualification actions, must affirmatively inquire as to whether the attorney had actual access to any confidential matters during the prior representation. The court observed that a presumption of the existence of confidential communications arises from the very fact of the attorney-client relationship.

[T]he court need not, indeed cannot, inquire whether the lawyer did, *in fact*, receive confidential information during his previous employment which might be used to the client's disadvantage . . . . . Thus, where "it can reasonably be said that in the course of the former representation the attorney *might* have acquired information related to the subject matter of his subsequent representation," [citation omitted] it is the court's duty to order the attorney disqualified. 478 F.2d at 571.

*Accord, Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225 (2d Cir. 1977).

Applying the standard for disqualification articulated in the Second Circuit, the court is persuaded that R–T Leasing has failed to sustain its burden of proof as to the first prong of the test, that of the existence of a prior attorney-client relationship among R–T Systems, R–T Leasing and Cahill. As R–T Leasing has not satisfied this threshold requirement, the court need not consider whether a substantial relationship existed between the issues present in both the prior transactions between Cahill and R–T Systems and the pending action before this court.

The court concludes that the affidavits submitted by R–T Leasing in support of its motion establish only that Cahill, in a relationship entirely adverse to R–T Systems and R–T Leasing, assisted its client, TOC, in the acquisition of two subsidiaries of R–T Systems and also in the ultimately aborted merger plan with R–T Systems. No legal authority has reached the attention of this court that premises disqualification of an attorney's previous representation of a client in a relationship adverse to the party moving for disqualification. The simple reason for the absence of such authority is that an attorney-client relationship necessarily demands consent and cooperation of both parties, precluding an adversary relationship such as that which existed among Cahill, R–T Systems and R–T Leasing.

The key facts offered by R–T Leasing in support of its motion are that Cahill performed services as counsel for R–T Systems during negotiations for TOC's acquisition of the two subsidiaries to the extent that Cahill allegedly consulted with R–T Systems regarding its internal problems, including advice on fending off potential takeovers and the proper disclosures to the SEC. According to R–T Leasing, these alleged consultations permitted Cahill's access to confidential records of R–T Systems and R–T Leasing.

 What R–T Leasing appears to overlook is that Canon 4 protects only clients against disclosure of confidential information. Thus, it is immaterial that Cahill may have had access to the "confidential" matters of R–T Systems because Canon 4 does not protect such confidences from scrutiny of opposing counsel. *See Emle Industries v. Patentex, Inc., supra.* Affidavits submitted by Cahill have persuaded the court that in all transactions of 1970 to 1973, Cahill was indeed counsel solely for TOC and its subsidiary, parties with potential if not actual adverse interests to R–T Systems and R–T Leasing. First and foremost, R–T Systems was represented by independent counsel, McDermott, Will and Emery, in all negotiations concerning TOC's purchase of R–T Systems stock, the two acquisitions and the possible merger. Equally probative of the arms-length and entirely adverse relationship between Cahill and R–T Systems is the 1979 10–K form submitted as evidence by Cahill, stating that no material relationship existed between R–T Systems and TOC, the client of Cahill. Furthermore, TOC's position as a stockholder of ten percent of the stock of R–T Systems does not lead to the imputation of Cahill's acting as counsel to R–T Systems. The facts of the instant case are analogous to those appearing in *International Electronics Corp. v. Flanzer*, 527 F.2d 1288 (2d Cir. 1975). Reversing the lower court's grant of plaintiffs' disqualification motion of an attorney who had acted on behalf of the defendant selling shareholders, the court reasoned that

The law firm and the plaintiffs [the merged corporation] were on opposite sides of the negotiations which were conducted at arms length. The plaintiffs' attack is now on the *bona fides* of the selling stockholders. These defendants—the selling stockholders—not the buyer, were the clients of the law firm. 527 F.2d at 1292.

As in *Flanzer*, TOC, as purchaser of R–T Systems stock and subsidiaries and also as a potential merger candidate, was on the opposite end of the bargaining table with R–T Systems in the negotiations of 1970 to 1973; Cahill, as attorney for TOC occupied a position adverse, albeit friendly, to R–T Systems. Furthermore, R–T Systems offers no evidence that Cahill accepted fees for legal services from R–T Systems or in any way comported itself in a manner inconsistent with its role as counsel for TOC.

The cases relied upon by R–T Leasing for the proposition that *de facto* legal representation is sufficient to activate the sanction of disqualification pursuant to Canon 4, first, establish no such principle and, second, are inapposite to the facts of the instant case. *Emle Industries, supra,* and *Hull v. Celanese Corp.*, 513 F.2d 568 (2d Cir. 1975) each involved disqualification of an attorney from representation adverse to a former *client*, a situation that does not exist here. In *Emle, supra,* the court disqualified the attorney from bringing a suit against Burlington, a subsidiary of Patentex *and* a former client. In *Hull, supra,* a former attorney for a corporation, a Ms. Donata Delulio, who assisted in the prosecution of a sex-discrimination suit on behalf of her former client, was disqualified from switching sides in the same action to act as a plaintiff-witness for the opposing counsel in the identical suit. Although the facts of *Hull* do not squarely conform to the strictures of Canon 4 since the attorney did not act as counsel for the opposing party, the very existence of a prior representation of the now adverse former client, exposing the client to a serious risk of disclosure of confidences, was the decisive factor in the court's decision to grant the disqualification motion. These cases do not support R–T

Leasing's suggestion that a *de facto* attorney-client relationship may be used as a ground for disqualification under Canon 4.

For the reasons stated above, this court concludes that R–T Leasing has failed to sustain its burden of demonstrating the existence of an attorney-client relationship among Cahill and R–T Systems and R–T Leasing. Therefore, the motion to disqualify Cahill as counsel for Ethyl is denied.

*Canon 9*

R–T Leasing's argument that Cahill should be disqualified under Canon 9 similarly fails.

Canon 9 provides that "[a] lawyer should avoid even the appearance of professional impropriety." Canon 9, not unlike the ancient adage that Caesar's wife shall be above suspicion, has been cautiously applied by the courts in light of its potential abuse as a dilatory tactic in litigation. As the court observed in *International Electronics, supra,*

> We caution . . . that Canon 9, though there are occasions when it should be applied, should not be used promiscuously as a convenient tool for disqualification when the facts simply do not fit within the rubric of other specific ethical and disciplinary rules. 527 F.2d at 1295.

The court fails to detect any "appearance of impropriety" in Cahill's present representation of Ethyl. The court reiterates its finding that Cahill never entered into an attorney-client relationship with R–T Systems or R–T Leasing in the transactions of 1970 to 1973, leading to an appearance of impropriety in its subsequent representation of Ethyl in the present action. As a result, Canon 9 is inapplicable.

So Ordered.