[No. B153290. Second Dist., Div. Five. July 30, 2002.]

KHYBRETTE NEAL, Plaintiff and Appellant, v.
HEALTH NET, INC., et al., Defendants and Respondents.

COUNSEL

Michael S. Traylor for Plaintiff and Appellant.

Ballard Rosenberg Golper & Savitt, Wendy Moss, Dawn Cushman and Christine T. Hoeffner for Defendants and Respondents.

OPINION

TURNER, P. J.—

## I. INTRODUCTION

In *Flatt v. Superior Court* (1994) 9 Cal.4th 275, 283 [36 Cal.Rptr.2d 537, 885 P.2d 950], the California Supreme Court recognized the presumption that exists when a client seeks to disqualify a former lawyer in subsequent litigation. The court held: "[W]here a former client seeks to have a previous attorney disqualified from serving as counsel to a successive client in litigation adverse to the interests of the first client, the governing test requires that the client demonstrate a *'substantial relationship'* between the subjects of the antecedent and current representations." (*Ibid.*) Once a substantial relationship exists, it is presumed that the lawyer who the former client seeks to be disqualified is in possession of confidential information pertinent to the present lawsuit and disqualification is mandatory. (*Ibid.*) The same presumption applies when an attorney has an of counsel relationship with the prior attorney. (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1144-1156 [86 Cal.Rptr.2d 816, 980 P.2d 371].) But what happens when a lawyer is representing a plaintiff in an existing lawsuit and is subsequently retained by a former legal secretary for the defendant in that very same litigation; in the context of the specific facts before us, is there a presumption the new client is in possession of confidential information such as to mandate or even permit disqualification? And if the new client, the legal secretary formerly employed by the defendant, exposes the lawyer to confidential information, is disqualification in the existing lawsuit a proper remedy under California law? We answer each of these questions in this very, very close and difficult case in the negative.

Plaintiff, Khybrette Neal, appeals from an order disqualifying her attorney, Michael S. Traylor, from representing her in an employment discrimination lawsuit filed against defendants, Health Net, Inc., Foundation Health System (Health Net) and Gil Gallegos, her former employer and supervisor, respectively. Relying on *Hull v. Celanese Corporation* (2d Cir. 1975) 513 F.2d 568, 569-571, the trial court granted defendants' motion to disqualify Mr. Traylor from representing plaintiff after he agreed to represent Cynthia Brockett, a legal secretary formerly employed by Health Net. Ms. Brockett was terminated after she accessed a Health Net computer file containing attorney-client information related to plaintiff's action against defendants. Ms. Brockett accessed the computer file while employed by Health Net. Mr. Traylor later agreed to represent Ms. Brockett in her own separate discrimination lawsuit against Health Net. No applicable legal principle allows for disqualification under the circumstances of this case. Accordingly, the disqualification order must be reversed.

## II. BACKGROUND

On June 1, 2001, plaintiff filed this action against her former employer and supervisor alleging she had been wrongfully discharged from her position as human resources manager due to race and gender discrimination. She alleged causes of action for contract breach, fraud, intentional infliction of emotional distress, assault, and slander. Ms. Brockett also was employed by Health Net and had made complaints that she was the victim of gender and disability discrimination. As the human resources manager, plaintiff had reviewed and responded to at least one of Ms. Brockett's discrimination complaints. Needless to note, this review occurred prior to plaintiff's termination.

On September 10, 2001, during the pendency of the present lawsuit, defendants filed a motion to disqualify Mr. Traylor as counsel of record for plaintiff. Defendants contended that Mr. Traylor met with and began representing Ms. Brockett, a member of Health Net's legal department. Ms. Brockett admitted accessing and reviewing plaintiff's litigation file. The file contained confidential documents including attorney notes and memoranda. In support of these contentions, defendants filed the declaration of Cory Sotolov, a manager of litigation administration. Ms. Sotolov oversaw the activities of the legal department's support staff. From March 9, 1998, to August 22, 2001, Ms. Brockett was employed as a secretary in the legal department. As a legal secretary, Ms. Brockett was under the direct supervision of an attorney who handled managed care litigation. Ms. Brockett was responsible for tendering all claims to Health Net's insurance carrier. Ms. Brockett had no day-to-day involvement in handling employment litigation

problems. The legal department utilizes "Case Track," a document management database that permits a user to access all information pertinent to a particular litigation matter rather than reviewing the "hard file." The legal department's practice is to input all information into the system including attorney notes of privileged communications. Because the system has the ability to scan documents, the files include privileged correspondence and reports from outside litigation counsel. The legal department also maintains a physical file for each litigation matter. In an employment-related case, the file includes a copy of the plaintiff's personnel file, including any internal investigation conducted at the request of counsel.

On August 9, 2001, Ms. Sotolov received an e-mail from the legal department's administrative assistant, Michelle Hart-Molina. Ms. Hart-Molina advised Ms. Sotolov that Ms. Brockett had been looking for plaintiff's file earlier that day. Ms. Hart-Molina became suspicious and tried to access plaintiff's file in the computer. The system advised her that the file had been "locked" by Ms. Brockett for two and one-half hours. The file included attorney notes and memoranda.

Also on August 9, 2001, a person identifying herself as Cynthia Brockett telephoned the office of Ballard, Rosenberg, Golper & Savitt, LLP, requesting to speak to Linda Miller Savitt, who is the lead trial counsel in this action. Ms. Brockett spoke to Lori Liebman, Ms. Savitt's assistant. Ms. Brockett stated she worked in the Health Net legal department. Ms. Brockett wished to speak to Ms. Savitt. Ms. Liebman informed Ms. Brocket that Ms. Savitt represented Health Net. Ms. Liebman's declaration relates, "Ms. Brockett thanked me for my time and hung up."

On August 13, 2001, Ms. Sotolov met with Phillip Davis, vice-president and assistant general counsel of litigation for Health Net, to discuss the issues raised by Ms. Brockett's access to plaintiff's file and the apparent attempt to contact Ms. Savitt. Mr. Davis subsequently met with Ms. Brockett. Ms. Brockett admitted requesting plaintiff's litigation file. Ms. Brockett admitted reviewing plaintiff's case track file. Ms. Sotolov's declaration stated: "[Ms.] Brockett advised Mr. Davis that she was a 'very close friend' of [plaintiff] and that she wished to review her employment file because she was 'concerned' about her." However, Ms. Brockett denied calling outside counsel. Ms. Brockett was placed on a one-week paid suspension, pending completion of a further investigation.

In investigating the matter, Ms. Sotolov discovered that on August 13, 2001, Ms. Brockett attempted to delete all personal documents stored in her computer. However, they retrieved the documents from Ms. Brockett's

"recycle bin" including two notes dated August 9, 2001. One note confirmed Ms. Brockett's telephone call to Ms. Savitt's assistant, Ms. Liebman. The second note confirmed that she had a meeting with Mr. Traylor on August 11, 2001. On August 14, 2001, Mr. Davis received a letter from Mr. Traylor. In the letter, Mr. Traylor stated he would be representing Ms. Brockett in addition to plaintiff.

Plaintiff opposed the disqualification motion on the grounds: defendants failed to articulate a recognized theory for disqualification given that Mr. Traylor never represented defendants; there was no basis for disqualification because the evidence did not show and it could not be presumed Ms. Brockett passed on confidential information; defendants failed to provide evidence that Ms. Brockett actually accessed any confidential information; defendants failed to disclose the nature of the confidential information allegedly accessed; Ms. Brockett could not be held to the same standard as an attorney; plaintiff had not obtained an unfair advantage because Ms. Brockett did not obtain or disclose any information; plaintiff rebutted any presumption of disqualification because Ms. Brockett was a client and not an employee of Mr. Traylor; Ms. Brockett would not have any involvement with the case at issue; and the motion was brought to delay discovery.

In opposition to the motion, Mr. Traylor declared that he had never represented Health Net. On August 9, 2001, Ms. Brockett contacted him regarding legal representation for herself. When the two met on August 11, 2001, Mr. Traylor specifically advised Ms. Brockett that she could not give him any information that she might have regarding the case at bench. Mr. Traylor advised her that to do so would be unethical. Ms. Brockett indicated that she had no such information. He denied receiving any information or documents from Ms. Brockett.

Ms. Brockett declared that, while employed by Health Net, she became the victim of discrimination based on disability, gender, and sexual orientation. She complained numerous times to Health Net employees. Plaintiff was one of the people who responded to Ms. Brockett's complaints. They had not communicated with each other except for the response to Ms. Brockett's work-related issues. She respected plaintiff as a human resources officer. Ms. Brockett was aware from office chatter that on plaintiff's last day of work, an ambulance came for plaintiff. Ms. Brockett also knew that plaintiff had sued the company and decided to contact Mr. Traylor. Ms. Brockett admitted that she went into Case Track, the document database. However, Ms. Brockett stated she did it only to obtain Mr. Traylor's name solely in order to seek an attorney to represent her in her suit against Health Net. Ms. Brockett denied seeing any notes or correspondence from any attorneys or

any information about defendants' position in this case. She saw no investigation notes, opinions, or settlement information. Ms. Brockett admitted calling Ms. Savitt. Ms. Brockett was under the erroneous belief that she was calling plaintiff's counsel. She indicated that she only spent five minutes reviewing the Case Track database. It was a common occurrence in the office to gain access to a file and not log out immediately. This would account for the allegation that Ms. Brockett spent two and one-half hours reviewing plaintiff's case. Ms. Brockett further admitted asking Susan Martel to see plaintiff's litigation file. Ms. Martel advised Ms. Brockett that the request was inappropriate. However, a few minutes later, Ms. Martel pointed to where the file might be found. Ms. Brockett did not pursue the issue any further because it seemed to be inappropriate. Ms. Brockett confirmed that Mr. Traylor had advised her that she could not disclose any information about the present case to him. She also confirmed that she told him she had no information to disclose and did not in fact disclose any such information. The conversation between Mr. Traylor and Ms. Brockett was limited to her claims against Health Net.

Plaintiff also filed a declaration. While working for Health Net as a human resources manager, plaintiff met Ms. Brockett. Plaintiff was assigned to review Ms. Brockett's claims against Health Net. Plaintiff denied having any other contact with Ms. Brockett. Plaintiff has never asked anyone for any documents, materials, or other information about Health Net.

In reply, defendants argued that plaintiff had missed the point of the motion in that it was not based on Mr. Traylor's prior representation of Health Net. Rather, the disqualification motion rested on the Mr. Traylor's decision to communicate with and represent an employee of Health Net, which is sufficient for disqualification under standards set forth in *Hull v. Celanese Corporation, supra*, 513 F.2d at pages 569-572, and *In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572, 585-603 [283 Cal.Rptr. 732]. Defendants further argued that they were not required to show specific confidences had been seen or disclosed. Defendants argued they could prevail if they showed evidence of the former employee's job responsibilities or participation in privileged communications. Defendants argued they established and Ms. Brockett confirmed that she did in fact access and review the Case Track database, which contained confidential information. Ms. Brockett then met with plaintiff's counsel two days later. According to defendants, plaintiff's declarations were insufficient to rebut the presumption that Ms. Brockett did not or would not have any involvement with plaintiff's case.

After a hearing and argument, the trial court granted the motion. Relying primarily on *Hull v. Celanese Corporation, supra*, 513 F.2d at pages 569-572, the trial court indicated that disqualification was warranted under the

circumstances of the case including Ms. Brockett's admission that she accessed plaintiff's legal file. Plaintiff filed a timely appeal from the order disqualifying her attorney from representing her in this action.[1]

### III. DISCUSSION

#### A. *The Standard of Review*

■ We review the trial court's disqualification ruling for abuse of discretion. (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc., supra,* 20 Cal.4th at pp. 1143-1144; *Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Technology, Inc.* (1999) 69 Cal.App.4th 1399, 1403 [82 Cal.Rptr.2d 326]; *Metro-Goldwyn-Mayer, Inc. v. Tracinda Corp.* (1995) 36 Cal.App.4th 1832, 1838 [43 Cal.Rptr.2d 327]; *In re Marriage of Zimmerman* (1993) 16 Cal.App.4th 556, 561 [20 Cal.Rptr.2d 132].) In *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc., supra,* 20 Cal.4th at pages 1143-1144, the California Supreme Court stated: "If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied findings supported by substantial evidence. [Citations.] When substantial evidence supports the trial court's factual findings, the appellate court reviews the conclusions based on those findings for abuse of discretion. [Citation.] However, the trial court's discretion is limited by the applicable legal principles. [Citation.] Thus, where there are no material disputed factual issues, the appellate court reviews the trial court's determination as a question of law. [Citation.] In any event, a disqualification motion involves concerns that justify careful review of the trial court's exercise of discretion. [Citation.]" (See *Adams v. Aerojet-General Corp.* (2001) 86 Cal.App.4th 1324, 1330-1331 [104 Cal.Rptr.2d 116].)

In exercising its discretion in this case, the trial court stated: "The Court finds the factual scenario very troubling. Given Cynthia Brockett's acknowledged access to Defendant's privileged attorney-client communications by virtue of her former employment in Defendant's legal department, and the fact that Plaintiff's counsel now represents her in litigation against the Defendant, there exists a reasonable probability that Plaintiff's counsel has obtained privileged information. [¶] Although there do not appear to be any cases precisely on point, the facts are closest to those at issue in *Hull v. Celanese Corporation[,supra,]* 513 F.2d 568, where an attorney for the corporate legal staff of Celanese left the employ of Celanese and subsequently retained the plaintiff's law firm to represent her in legal action

---

[1]The notice of appeal was filed on September 21, 2001. The order disqualifying plaintiff's attorney was filed on September 27, 2001. We deem the premature appeal to be timely. (Cal. Rules of Court, rule 2(d).)

against Celanese. This set of facts led to disqualification. In the case at bar, a former member of Defendant's legal staff has left Defendant's employ and hired Plaintiff's counsel to represent her legal interests against the Defendant."

Thus, in this case, the trial court based its ruling on Ms. Brockett's admission that she accessed plaintiff's legal file. The declarations filed in support of and in opposition to the disqualification motion presented conflicting evidence as to how long Ms. Brockett reviewed the file and whether she actually reviewed confidential materials. Ms. Brockett claimed she only reviewed the file for a few minutes. But Ms. Brockett admitted that she may have left the file open for a much longer period of time. She also claimed that she did it solely to obtain Mr. Traylor's name and telephone number. She also declared that she did not see anything confidential. Defendants presented evidence that the computer records indicated that Ms. Brockett was in the file for two and one-half hours. In addition, Ms. Brockett requested plaintiff's personnel file. Defendants presented declarations that the records contained confidential information including the results of attorney requested investigations. The file also contained correspondence between defendants and their attorneys. We presume the court determined all disputed factual matters in favor of defendants. As a result, we assume the truth of defendants' factual contentions that are supported by the evidence Ms. Brockett had access to the file for two and one-half hours and there was confidential information in the database. (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*, *supra*, 20 Cal.4th at pp. 1143-1144; *Adams v. Aerojet-General Corp.*, *supra*, 86 Cal.App.4th at p. 1330.)

However, the trial court further concluded that there was a reasonable probability that Ms. Brockett shared the confidential information with Mr. Traylor, which justified disqualification of plaintiff's chosen counsel. There was no direct evidence that the information was shared. Defendants had no way of disputing the declarations of Ms. Brockett and Mr. Traylor that no information was shared. The trial court nevertheless concluded it was entitled to presume that any information Ms. Brockett reviewed in the files was passed on to Mr. Traylor and the legal significance of that presumption required his disqualification as plaintiff's counsel. Our task is to decide, as a question of law, whether under applicable legal principles the trial court acted beyond the allowable scope of its judicial discretion in determining disqualification of plaintiff's counsel was the appropriate remedy under the circumstances of this case. (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*, *supra*, 20 Cal.4th at p. 1144; *Gregori v. Bank of America* (1989) 207 Cal.App.3d 291, 305 [254 Cal.Rptr. 853].)

## B. *Disqualification Principles*

█ A judge's authority to disqualify an attorney has its origins in the inherent power of every court in the furtherance of justice to control the conduct of ministerial officers and other persons in pending judicial proceedings. (Code Civ. Proc., § 128, subd. (a); *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc., supra*, 20 Cal.4th at p. 1145; *Comden v. Superior Court* (1978) 20 Cal.3d 906, 916, fn. 4 [145 Cal.Rptr. 9, 576 P.2d 971, 5 A.L.R.4th 562]; *In re Complex Asbestos Litigation, supra*, 232 Cal.App.3d at p. 585.) In *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc., supra*, 20 Cal.4th at pages 1145-1146, the Supreme Court held: "Ultimately, disqualification motions involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility. (*Comden v. Superior Court, supra*, 20 Cal.3d at p. 915.) The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process. (*Ibid.*; *In re Complex Asbestos Litigation, supra*, 232 Cal.App.3d at p. 586; *River West, Inc. v. Nickel* [(1987)] 188 Cal.App.3d [1297,] 1306-1308 [234 Cal.Rptr. 33]; see 1 Hazard & Hodes, The Law of Lawyering [(2d ed. 1996 & 1998 supp.)] § 1.7:101, pp. 223-225 [discussing the assumed function of automatic disqualification rules in maintaining public confidence in the legal system].)"

In addition to loyalty to a client, at the core of California's disqualification jurisprudence is a concern for the confidentiality of lawyer-client communications. In *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc., supra*, 20 Cal.4th at page 1146, the Supreme Court held: "Protecting the confidentiality of communications between attorney and client is fundamental to our legal system. The attorney-client privilege is a hallmark of our jurisprudence that furthers the public policy of ensuring ' "the right of every person to freely and fully confer and confide in one having knowledge of the law, and skilled in its practice, in order that the former may have adequate advice and a proper defense." [Citation.]' (*Mitchell v. Superior Court* (1984) 37 Cal.3d 591, 599 [208 Cal.Rptr. 886, 691 P.2d 642].) To this end, a basic obligation of every attorney is '[t]o maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client.' (Bus. & Prof. Code, § 6068, subd. (e).) [¶] To protect the confidentiality of the attorney-client relationship, the State Bar Rules of Professional Conduct, rule 3-310 (rule 3-310) prohibits attorneys from accepting, without the client's informed written consent, 'employment adverse to the client or former client where, by reason of the representation of the client or former client, the [attorney] has obtained confidential

information material to the employment.' (Rule 3-310(E); *Flatt, supra*, 9 Cal.4th at pp. 283-284; *Western Continental Operating Co.* v. *Natural Gas Corp.* (1989) 212 Cal.App.3d 752, 759 [261 Cal.Rptr. 100].) Where an attorney successively represents clients with adverse interests, and where the subjects of the two representations are substantially related, the need to protect the first client's confidential information requires that the attorney be disqualified from the second representation. (*Flatt, supra*, 9 Cal.4th at p. 283.) For the same reason, a presumption that an attorney has access to privileged and confidential matters relevant to a subsequent representation extends the attorney's disqualification vicariously to the attorney's entire firm. (*Ibid.*)" In *SpeeDee Oil*, the Supreme Court concluded: "We adopt the prevailing rule concerning 'of counsel' conflicts of interest and reverse the judgment of the Court of Appeal. For attorneys in the same firm to represent adverse parties in the same litigation is so patently improper that the rule of disqualification is a per se or 'automatic' one. (See *Flatt, supra*, 9 Cal.4th at p. 284, fn. 3 and accompanying text.) Conflicting representations that would disqualify all of a law firm's attorneys are not more acceptable when an attorney of counsel to the firm creates the conflict. Clients, and the public, should expect confidentiality and loyalty from attorneys who effectively declare they practice law in a close, personal, and continuing association. These legitimate expectations would be frustrated if a firm could represent one party in litigation while an attorney of counsel to the firm represented an adversary in the same case." (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc., supra*, 20 Cal.4th at pp. 1139-1140.)

 In terms of the presumption of possession of confidential information, the present case is entirely different. Ms. Brockett is not an attorney. Ms. Brocket has not become affiliated with Mr. Traylor, plaintiff's attorney, as a legal secretary to a partner, an associate, in an of counsel capacity, a law clerk, or paralegal. Ms. Brocket is a *client*. The Supreme Court has never held that the presumption of possession of confidential information and the *automatic* disqualification rule applies when a nonlawyer client who may have access to privileged matters retains an attorney. In the absence of a constitutional provision, statute, regulation, direction from the Supreme Court, or other proper jurisprudential ground, we decline to adopt such a rule.

There are a number of California decisions that have discussed the issue of whether an attorney should be disqualified after being exposed to an adverse party's confidential information. These cases, which articulate controlling neutral principles of law, are directly pertinent to the disqualification motion at issue. The cases have consistently concluded that mere exposure to confidential information of the opposing party does not require disqualification. (See *Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th

294, 302-304, 308-315 [106 Cal.Rptr.2d 906]; *Bell v. 20th Century Ins. Co.* (1989) 212 Cal.App.3d 194, 198 [260 Cal.Rptr. 459]; *Maruman Integrated Circuits, Inc. v. Consortium Co.* (1985) 166 Cal.App.3d 443, 448 [212 Cal.Rptr. 497]; *Cooke v. Superior Court* (1978) 83 Cal.App.3d 582, 592 [147 Cal.Rptr. 915].)

In *Fox Searchlight Pictures, Inc. v. Paladino, supra,* 89 Cal.App.4th at pages 303-304, the plaintiff attempted to disqualify an attorney representing its former in-house counsel. The ground of the disqualification motion was that the former in-house counsel had disclosed confidential and privileged information belonging to the plaintiff. *Fox Searchlight* held that the trial court properly denied the plaintiff's disqualification motion because the former in-house counsel was entitled to disclose to her own attorney all facts relevant to the termination including employer confidences and privileged communications. (*Id.* at pp. 302-304.) *Fox Searchlight* concluded that, if the disqualification rules applied, it would effectively ban any litigation by the former in-house counsel against her employer. ■ Such a result, *Fox Searchlight* concluded, was contrary to the Supreme Court's decision in *General Dynamics Corp. v. Superior Court* (1994) 7 Cal.4th 1164, 1190 [32 Cal.Rptr.2d 1, 876 P.2d 487], in which it was held that an in-house counsel could sue a former employer for wrongful termination as long as confidential information was not publicly disclosed. (*Fox Searchlight Pictures, Inc. v. Paladino, supra,* 89 Cal.App.4th at p. 304.)

In *Bell v. 20th Century Ins. Co., supra,* 212 Cal.App.3d at page 198, a wrongful termination action, an employer sought to disqualify an attorney representing its former personnel officer. During the course of her employment, she discussed the defenses and legal strategies of another person who had sued the employer for wrongful termination. The plaintiff, the former personnel officer, hired the law firm that had represented the other person. The employer, the defendant, moved to disqualify the plaintiff's counsel on the ground that the attorney could use the confidential information. The confidential information was obtained by the plaintiff during her employment with defendant. The Court of Appeal affirmed the trial court's order denying the disqualification motion. (*Ibid.*) *Bell* concluded that disqualification was unwarranted because the representation neither appeared improper nor did it improperly prejudice the plaintiff's former employer. (*Ibid.*) *Bell* further held that even if the plaintiff had disclosed the employer's confidential information: "We fail to see how Ms. Bell could have improperly disclosed information to her own counsel in the prosecution of *her own lawsuit.* Moreover, even assuming she could have improperly disclosed such information, defendants offer no explanation how disqualification of the Mazursky firm will remedy the situation. Ms. Bell would be free to disclose

this purported confidential information to her new counsel, leaving defendants in the identical position they are presently in." (*Ibid.*)

In *Maruman Integrated Circuits, Inc. v. Consortium Co., supra,* 166 Cal.App.3d at page 446, one of the plaintiff's former employees began working for the defendant. At a deposition, the former employee testified that while working for the plaintiff she had dealt with the defendant's attorneys. (*Ibid.*) The former employee testified that, after she left the plaintiff's employment, she spoke with the defendant's law firm two or three times. The discussions involved information she received during conversations with the plaintiff's lawyers. (*Ibid.*) As noted previously, she had formerly worked for the plaintiff. She further testified that she delivered to the defendant's law firm two letters written by her former employer, the plaintiff. (*Ibid.*) *Maruman* affirmed an order refusing to disqualify the defendant's law firm on the basis that the plaintiff's employee had disclosed confidential information. (*Id.* at pp. 447-451.)

Based on the applicable legal standards, we must conclude the trial court acted beyond the scope of its allowable judicial discretion under the circumstances of this case because disqualification was unwarranted. First, there was no evidence that *any* information, confidential or otherwise, concerning plaintiff's case was given to Mr. Traylor by Ms. Brockett. The declarations filed in opposition to the motion establish that Mr. Traylor and his new client, Ms. Brockett, had no discussions about plaintiff's case. They both declared that their discussions were limited to Ms. Brockett's case and Mr. Traylor's representation of her against Health Net. There is no evidence presented that anything of a confidential nature concerning plaintiff's case was passed on to Mr. Traylor during the conversations between Mr. Traylor and his new client.

Second, to the extent that a reasonable inference could be made that confidential information was disclosed, there is no applicable legal standard that supports disqualification of Mr. Traylor as plaintiff's attorney as a sanction for Ms. Brockett's actions. As illustrated above, California authorities have consistently concluded that disqualification is inappropriate for mere exposure to information by an attorney to confidential information. (*Fox Searchlight Pictures, Inc. v. Paladino, supra,* 89 Cal.App.4th at pp. 302-304, 308-315; *Bell v. 20th Century Ins. Co., supra,* 212 Cal.App.3d at p. 198; *Maruman Integrated Circuits, Inc. v. Consortium Co., supra,* 166 Cal.App.3d at p. 448; *Cooke v. Superior Court, supra,* 83 Cal.App.3d at p. 592.)

Third, decisional authority has consistently concluded that a party cannot improperly disclose confidential information to one's own counsel in the

prosecution of one's own lawsuit. To do otherwise (i.e., barring discussions of an adversary's confidences known to the client), would defeat the purpose of confidentiality, which is to promote full and open discussions between attorney and client. (*Fox Searchlight Pictures, Inc. v. Paladino, supra,* 89 Cal.App.4th at pp. 302-304, 308-315; *Bell v. 20th Century Ins. Co., supra,* 212 Cal.App.3d at p. 198; *Cooke v. Superior Court, supra,* 83 Cal.App.3d at p. 592.) Thus, a distinction must be made as to the person who disclosed the adverse party's attorney-client communications. Disclosure to one's own attorney of confidential information does not justify disqualification.

Fourth, disqualification is also an ineffective remedy because it would not prevent the party from giving new counsel the information, which would leave the adversary in the same position as before. (*In re Complex Asbestos Litigation, supra,* 232 Cal.App.3d at p. 591; *Bell v. 20th Century Ins. Co., supra,* 212 Cal.App.3d at p. 198; *Gregori v. Bank of America, supra,* 207 Cal.App.3d at pp. 308-309.) Fifth, the purpose of a disqualification must be prophylactic; an attorney may not be disqualified purely as a punitive or disciplinary measure. (*DCH Health Services Corp. v. Waite* (2002) 95 Cal.App.4th 829, 833 [115 Cal.Rptr.2d 847]; *Gregori v. Bank of America, supra,* 207 Cal.App.3d at pp. 308-309; *Maruman Integrated Circuits, Inc. v. Consortium Co., supra,* 166 Cal.App.3d at p. 448; *Cooke v. Superior Court, supra,* 83 Cal.App.3d at p. 592.)

Sixth, in cases such as the one at bench, where an adversarial relationship develops, the rights of the employer to avoid unwarranted public disclosure of its confidences must be balanced against the employee's right to maintain his or her lawsuit. (*General Dynamics Corp. v. Superior Court, supra,* 7 Cal.4th at pp. 1189-1191; *Fox Searchlight Pictures, Inc. v. Paladino, supra,* 89 Cal.App.4th at pp. 308-312.) Rather than disqualification of counsel, other sanctions can suffice. (*Gregori v. Bank of America, supra,* 207 Cal.App.3d at pp. 308-309.) Client confidences can be protected from unwarranted public disclosure by less drastic measures such as: protective orders, limiting the admission of evidence; in camera proceedings; the use of sealed records; payment of attorney fees and costs; and disciplinary sanctions through the State Bar of California in appropriate circumstances. (*General Dynamics Corp. v. Superior Court, supra,* 7 Cal.4th at p. 1191; *Fox Searchlight Pictures, Inc. v. Paladino, supra,* 89 Cal.App.4th at pp. 309-310; *Gregori v. Bank of America, supra,* 207 Cal.App.3d at pp. 308-309.) Accordingly, the fact that Ms. Brockett may actually have disclosed confidential information to Mr. Traylor did not warrant preventing him from representing plaintiff.

We disagree with defendant's contention that the trial court could properly rely upon the Second Circuit decision of *Hull v. Celanese Corporation,*

*supra*, 513 F.2d at pages 569-572, because it was "very troubled" by Ms. Brockett's conduct. *Hull* was at the heart of the trial court's exercise of discretion. *Hull* involved an action by a plaintiff, Donata A. Delulo, against her employer for discrimination. In *Hull*, the Second Circuit Court of Appeals concluded the district court did not abuse its discretion when it disqualified the plaintiff's counsel, the law firm of Rabinowitz, Boudin & Standard, to represent an in-house attorney, Joan Hull. (*Id.* at pp. 571-572.) Ms. Hull sought to intervene in the plaintiff's suit. Ms. Hull sought to pursue her own title VII civil rights claims. Ms. Hull, the former in-house counsel for the defendant, had worked on the plaintiff's lawsuit. It bears emphasis that Ms. Hull, the in-house attorney, had provided legal representation to the defendant in the same lawsuit. *Hull* concluded disqualification of the Rabinowitz firm was appropriate based on the status of the new client as in-house counsel and under the appearance of impropriety standard. The court in *Hull* emphasized the narrow scope of its holding when it noted: "The novel factual situation presented here dictates a narrow reading of this opinion. This decision should not be read to imply that either Hull [the former in-house counsel] or Delulio [the plaintiff] cannot pursue her claim of employment discrimination based on sex. The scope of this opinion must, of necessity, be confined to the facts presented and not read as a broad-brush approach to disqualification." (*Id.* at p. 572; *Maruman Integrated Circuits, Inc. v. Consortium Co., supra,* 166 Cal.App.3d at p. 450 ["The *Hull* decision is limited to its peculiar fact situation"]; *Religious Technology Center v. F.A.C.T.Net, Inc.* (D.Colo. 1996) 945 F.Supp. 1470, 1478 [*Hull* is to be read narrowly]; *In re Airport Car Rental Antitrust* (N.D.Cal. 1979) 470 F.Supp. 495, 504 [*Hull* "decision rested on the unusual factual circumstances of the case: . . ."].)

*Hull* is not controlling. At the heart of the *Hull* analysis is the notion that exposure to confidential information permits disqualification. (*R-T Leasing Corp. v. Ethyl Corp.* (S.D.N.Y 1979) 484 F.Supp. 950, 953, affd. (2d Cir. 1980) 633 F.2d 206.) *Hull* is inconsistent with controlling California authorities providing that disqualification is inappropriate for mere exposure of confidential information to an attorney. (*Fox Searchlight Pictures, Inc. v. Paladino, supra,* 89 Cal.App.4th at pp. 302-304, 308-315; *Bell v. 20th Century Ins. Co., supra,* 212 Cal.App.3d at p. 198; *Maruman Integrated Circuits, Inc. v. Consortium Co., supra,* 166 Cal.App.3d at p. 448; *Cooke v. Superior Court, supra,* 83 Cal.App.3d at pp. 590-592.)

In addition, *Hull* relied upon the appearance of impropriety standard in canon 9 of the American Bar Association Model Code of Professional Responsibility (hereinafter Canon 9), which provides, "A lawyer should avoid even the appearance of professional impropriety." (*Hull v. Celanese*

*Corporation, supra,* 513 F.2d at pp. 571-572, fn. 12.) However, although this state's courts have adverted to it, California has not adopted Canon 9 in either the State Bar Rules of Professional Conduct or in the Business and Professions Code. (*Gregori v. Bank of America, supra,* 207 Cal.App.3d at pp. 305-310 [social relationship between plaintiff's attorney and a legal secretary employed by defense counsel, who was familiar with all aspects of the litigation, did not require disqualification]; accord, *DCH Health Services Corp. v. Waite, supra,* 95 Cal.App.4th at pp. 833-834 [assuming duty of confidentiality owed to foundation as board member, appearance of impropriety was insufficient for disqualification].) Hence, *Hull,* the very authority on which the trial court based its exercise of discretion, is not controlling. By its very terms, *Hull* is not to be extended beyond the facts in that case, which involved an in-house counsel, Ms. Hull, who worked on the lawsuit in which she sought to intervene while represented by the plaintiff's attorney, the Rabinowitz firm, and its analysis is inconsistent with California law in material respects. (*Fox Searchlight Pictures, Inc. v. Paladino, supra,* 89 Cal.App.4th at pp. 303-304 & fn. 15 [declining to follow *Hull*]; *In re Meador* (Tex. 1998) 968 S.W.2d 346, 354 [distinguishing *Hull* and reaching the same conclusion concerning exposure to confidential information as *Fox Searchlight*].) Finally, the Second Circuit applied the presumption that Ms. Hull was in possession of confidential information of her former employer, the defendant, concerning the existing title VII civil rights suit. (*Hull v. Celanese Corporation, supra,* 513 F.2d at p. 572; see *MMR/Wallace Power & Indus. v. Thames Associates* (D.Conn. 1991) 764 F.Supp. 712, 726.) As we have noted, no such presumption exists in this case. *Hull* is not controlling.

We also disagree with defendants that the decision of *In re Complex Asbestos Litigation, supra,* 232 Cal.App.3d at pages 596-603, requires affirmance. In affirming a disqualification order, the Court of Appeal, in an opinion authored by then Associate Justice Ming Chin, articulated the following general standard for disqualifying nonlawyer employee conflicts of interest: "The party seeking disqualification must show that its present or past attorney's former employee possesses confidential attorney-client information materially related to the proceedings before the court. The party should not be required to disclose the actual information contended to be confidential. However, the court should be provided with the nature of the information and its material relationship to the proceeding. [Citation.] [¶] Once this showing has been made, a rebuttable presumption arises that the information has been used or disclosed in the current employment. The presumption is a rule by necessity because the party seeking disqualification will be at a loss to prove what is known by the adversary's attorneys and legal staff. [Citation.] To rebut the presumption, the challenged attorney has the burden of showing that the practical effect of formal screening has been

achieved. The showing must satisfy the trial court that the employee has not had and will not have any involvement with the litigation, or any communication with attorneys or coemployees concerning the litigation, that would support a reasonable inference that the information has been used or disclosed. If the challenged attorney fails to make this showing, then the court may disqualify the attorney and law firm." (*Id.* at p. 596, fn. omitted.)

The Court of Appeal therefore concluded that the trial court did not abuse its discretion when it disqualified the plaintiff's attorney, Jeffery B. Harrison. Mr. Harrison, an attorney for nine different plaintiffs in asbestos related litigation, hired a paralegal, Michael Vogel. Mr. Vogel had previously been employed by the law firm of Brobeck, Phegler & Harrison, which conducted the defense of the nine asbestos-related lawsuits. While with the Brobeck firm, Mr. Vogel worked on settlement evaluations; attended settlement evaluation meetings related to the matters at issue; and accessed 20 of the cases in the Brobeck firm's computer system in which Mr. Harrison represented the plaintiffs. Initially, upon arriving at Mr. Harrison's firm, Mr. Vogel, the paralegal, was isolated from the asbestos cases. However, Mr. Vogel began working on the cases while employed by Mr. Harrison, the plaintiff's attorney. Mr. Vogel also used information while working for Mr. Harrison, such as contact persons for service of subpoenas, that he had acquired while employed by the Brobeck law firm. (*In re Complex Asbestos Litigation, supra,* 232 Cal.App.3d at pp. 580-583.) The trial court concluded there was a reasonable probability the information learned by Mr. Vogel while working for the Brobeck firm had been disclosed to or would be used at Mr. Harrison's firm, which represented the plaintiffs. The Court of Appeal found no abuse of discretion when the trial judge disqualified Mr. Harrison from representing the plaintiffs in the nine asbestos cases. (*In re Complex Asbestos Litigation, supra,* 232 Cal.App.3d at pp. 596-599.)

There is a limited similarity between the facts in *Complex Asbestos Litigation* and this case. In both cases, an employee of the defendant's lawyers who had access to privileged information became affiliated with an attorney representing a plaintiff. That, however, is where the similarity ends. In *Complex Asbestos Litigation,* the issue was whether the disqualification was appropriate because the former employee was hired by the new firm to work as a paralegal. The paralegal worked on the same litigation while working for both the lawyers representing the plaintiffs and the defendants. There was no need to *apply* the presumption identified in *Flatt v. Superior Court, supra,* 9 Cal.4th at page 283, that confidential communications were available to the second law firm—because the paralegal was working on the same case. By contrast, in this case, Ms. Brockett was not hired to work as a legal secretary nor is there any evidence that suggests she was in any way

involved in the present litigation. She was a client. Of material consequence, there is no evidence Ms. Brockett had conveyed any confidential information about plaintiff's case to Mr. Traylor nor is there available to defendants a presumption to that effect. Accordingly, the standard for nonlawyer disqualification set forth in *Complex Asbestos Litigation* is not controlling in this case. This case involves the issue of the employee's right to communicate with her own counsel, which cannot be improper. (*Fox Searchlight Pictures, Inc. v. Paladino, supra,* 89 Cal.App.4th at pp. 302-304, 308-315; *Bell v. 20th Century Ins. Co., supra,* 212 Cal.App.3d at p. 198.)

The court in *Complex Asbestos Litigation* recognized this important distinction. Associate Justice Chin wrote: "Since the purpose of confidentiality is to promote full and open discussions between attorney and client [citation], it would be ironic to protect confidentiality by effectively barring from such discussions an adversary's confidences known to the client. A lay client should not be expected to make such distinctions in what can and cannot be told to the attorney at the risk of losing the attorney's services." (*In re Complex Asbestos Litigation, supra,* 232 Cal.App.3d at p. 590, fn. omitted.) In the omitted footnote, the *Complex Asbestos Litigation* court concluded: "[W]e would be reluctant to conclude that free exchange of information between attorney and client constitutes an impropriety threatening the integrity of the judicial process, at least when a nonattorney client is involved. (Compare *Bell v. 20th Century Ins. Co., supra,* 212 Cal.App.3d at p. 198, with *Hull v. Celanese Corporation*[, *supra,*] 513 F.2d 568 [staff attorney for corporation sought to intervene as a plaintiff in discrimination suit against corporation, resulting in plaintiffs' counsel being disqualified].)" (*In re Complex Asbestos Litigation, supra,* 232 Cal.App.3d at p. 590, fn. 7.)

Moreover, the *Complex Asbestos Litigation* decision distinguished California law from a federal district court opinion, *Williams v. Trans World Airlines, Inc.* (W.D.Mo. 1984) 588 F.Supp. 1037, 1040-1046. *Williams* essentially adopts defendant's position in this case. The *Williams* holding was described by the *Complex Asbestos Litigation* decision as follows: "In *Williams,* the defendant's personnel manager assisted its attorneys in several age discrimination cases, including the plaintiffs' cases. After the defendant put the manager on involuntary furlough, she retained the plaintiffs' attorneys to pursue her discrimination claim, bringing with her substantial information about defendant's policies and procedures. Although the manager denied any specific recollection of plaintiffs' cases, or possessing any confidential documents, the court nevertheless disqualified the plaintiffs' attorneys in order to avoid the appearance of impropriety. ([*Williams v. Trans World Airlines, Inc., supra,* 588 F.Supp.] at pp. 1040, 1043, 1046.)" (*In re Complex Asbestos Litigation, supra,* 232 Cal.App.3d at p. 590, fn. 7.) The *Complex*

*Asbestos Litigation* decision declined to follow *Williams,* noting that in California the mere appearance of impropriety is insufficient by itself to permit disqualification. (Complex Asbestos Litigation, at p. 590, fn. 7.) Further, the *Complex Asbestos Litigation* decision disagreed with the holding in *Williams* that the free flow of information between lawyer and client is inappropriate. As previously noted, the *Complex Asbestos Litigation* court stated: "Nevertheless, we would be reluctant to conclude that free exchange of information between attorney and client constitutes an impropriety threatening the integrity of the judicial process, at least when a nonattorney client is involved. [Citations.]" (*Id.,* at p. 590, fn. 7.) Of course, in *Complex Asbestos Litigation,* Mr. Vogel, the paralegal, was involved in the same litigation on behalf of the plaintiffs as that which he had participated in for defense counsel, the Brobeck firm. In this case, there is no evidence that even if the secretary, Ms. Brockett, possessed confidential information, she disclosed any to her attorney, Mr. Traylor. Both Ms. Brockett and Mr. Traylor unequivocally deny she conveyed any confidential information to him. And no presumption is available to assist defendants that she transmitted confidential information to Mr. Traylor, which in any event, as a *client,* she had a right to do. *Complex Asbestos Litigation,* which recognizes the right of a client to convey confidential information to a lawyer, does not warrant an affirmance of the disqualification order. No doubt, if there was evidence Ms. Brockett was in possession of confidential information and she was hired by Mr. Traylor in her capacity as a legal secretary or assistant and worked on this case, then under *Complex Asbestos Litigation,* disqualification would have been appropriate; but these are not the facts before us.

Because this case involves the former employee and now client's right to communicate confidential information to her own attorney, we also disagree with defendants that Mr. Traylor must be disqualified for violating rule 2-100 of the State Bar Rules of Professional Conduct, which prohibits communications with parties represented by counsel.[2] Rule 2-100(C)(3) specifically provides that the rule does not apply to "[c]ommunications otherwise authorized by law." There is no violation of rule 2-100(C)(3)

---

[2]All future references to a rule are to the State Bar Rules of Professional Conduct. Rule 2-100 provides: "(A) While representing a client, a member shall not communicate directly or indirectly about the subject of the representation with a party the member knows to be represented by another lawyer in the matter, unless the member has the consent of the other lawyer. [¶] (B) For purposes of this rule, a 'party' includes: [¶] (1) An officer, director, or managing agent of a corporation or association, and a partner or managing agent of a partnership; or [¶] (2) An association member or an employee of an association, corporation, or partnership, if the subject of the communication is any act or omission of such person in connection with the matter which may be binding upon or imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization. [¶] (C) This rule shall not prohibit: [¶] (1) Communications with a public officer, board, committee, or body; [¶] (2) Communications initiated by a party seeking

because communications of even confidential or privileged information with one's own attorney are authorized by law. (*Fox Searchlight Pictures, Inc. v. Paladino, supra,* 89 Cal.App.4th at pp. 302-304, 308-315; *Bell v. 20th Century Ins. Co., supra,* 212 Cal.App.3d at p. 198; *Maruman Integrated Circuits, Inc. v. Consortium Co., supra,* 166 Cal.App.3d at p. 448; *Cooke v. Superior Court, supra,* 83 Cal.App.3d at p. 592). As we have indicated above, litigants such as defendants, who are concerned that privileged or confidential information may be publicly disclosed by their former employee, should seek an appropriate protective order. (See *Continental Ins. Co. v. Superior Court* (1995) 32 Cal.App.4th 94, 119 [37 Cal.Rptr.2d 843] [rule 2-100 did not prohibit contact with former employee, but protective order could address concerns for communication with former employee]; *Nalian Truck Lines, Inc. v. Nakano Warehouse & Transportation Corp.* (1992) 6 Cal.App.4th 1256, 1264 [8 Cal.Rptr.2d 467] [attorney not prohibited by rule 2-100 from communicating with former member of adversary's control group and confidential information could be subject to protective order]; *Bobele v. Superior Court* (1988) 199 Cal.App.3d 708, 712-714 [245 Cal.Rptr. 144] [former rule 7-103, predecessor to rule 2-100, did not prohibit communication with former employees not members of control group but disclosure of privileged communications may be subject of protective order].) Because there was no violation of rule 2-100, disqualification of Mr. Traylor because of his discussions with and representation of Ms. Brockett was not legally authorized.

## IV. DISPOSITION

The disqualification order is reversed. The trial court is to enter a new order denying the disqualification motion. Plaintiff, Khybrette Neal, is to recover her costs on appeal from defendants, Health Net, Inc., Foundation Health System and Gil Gallegos.

Grignon, J., concurred.

MOSK, J.—I concur in the result because California law appears to be that a trial court may not disqualify an attorney for mere exposure to confidential information of the opposing party—that is, when there is no evidence that the attorney actually received or used such information. (*In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572, 589 [283 Cal.Rptr. 732] ["Mere exposure to the confidences of an adversary does not, standing alone, warrant disqualification"]; *Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 302-304 [106 Cal.Rptr.2d 906]; *Maruman Integrated*

advice or representation from an independent lawyer of the party's choice; or [¶ (3) Communications otherwise authorized by law."

*Circuits, Inc. v. Consortium Co.* (1985) 166 Cal.App.3d 443, 448 [212 Cal.Rptr. 497].)

I write separately, however, because I share the trial court's unease with the facts here. Health Net, Inc., legal department employee Cynthia Brockett (Brockett) undisputedly accessed litigant Khybrette Neal's (Neal) Health Net legal file and then, while still an employee of Health Net, met Neal's attorney, Michael S. Traylor (Traylor) concerning her claim against Health Net. Brockett retained Traylor as her lawyer in connection with her claim. Both Brockett's and Neal's claims were for wrongful termination and discrimination, and thus both cases involved Health Net's employment practices.

There are practical problems with the rule applied in this case. Even if none of Health Net's confidential information was actually transmitted to Traylor by Brockett, the facts create a "nagging suspicion" that Neal and Traylor have been "unfairly benefitted" in litigating against Health Net. (See *MMR/Wallace Power & Indus. v. Thames Associates* (D.Conn. 1991) 764 F.Supp. 712, 727.) It is difficult for a litigant in the position of Health Net to establish actual receipt of confidential information by opposing counsel. (See, e.g., *id.* at p. 726 ["Of course, it is impossible to know for certain what information was actually discussed at attorney Forstadt's meeting with Willett"].) Exposure of any communication between Traylor and his client Brockett cannot be compelled because it is protected by the attorney-client privilege. Moreover, "[e]ven if proof of receipt of confidential information is available . . . , '[one] may not be able to use it for fear of disclosure of the very confidences [one] wishes to be protected.' [Citations.]" (*NCK Org'n Ltd. v. Bregman* (2d Cir. 1976) 542 F.2d 128, 135.) Demanding proof of actual possession of protected information, and thereby requiring its revelation, "undermine[s] the very purpose of protecting the confidentiality of the fiduciary attorney-client relationship." (*Ibid.*; see also *Williams v. Trans World Airlines, Inc.* (W.D.Mo. 1984) 588 F.Supp. 1037, 1043 ["To hold a hearing on whether Campbell Schanck has conveyed confidential information would very likely compromise the confidences"].)

Both Traylor and Brockett testified that no confidential information was acquired or transmitted. There is no evidence to the contrary. Even if we assume, as we do, that their testimony is truthful, what occurred leaves the unfortunate appearance that confidential information is vulnerable to disclosure. This appearance jeopardizes the public trust in the integrity of the bar.

The facts in *Hull v. Celanese Corporation* (2d Cir. 1975) 513 F.2d 568 (*Hull*) were somewhat similar to those in the instant case. In *Hull*, an

attorney working for a corporate defendant in an employment case retained the plaintiff's attorney to represent him in his claim against his employer. The court affirmed the disqualification of the plaintiff's attorney. The court said, "the court need not 'inquire whether the lawyer did, in fact, receive confidential information . . . .' [Citation.] Rather, 'where "it can reasonably be said that . . . the attorney might have acquired information related to the subject matter of his subsequent representation," [citation], it is the court's duty to order the attorney disqualified.' [Citation.] The breach of confidence would not have to be proved; it is presumed in order to preserve the spirit of the Code [of Professional Responsibility]." (*Id.* at p. 572, italics omitted; see also *Emle Industries, Inc. v. Patentex, Inc.* (2d Cir. 1973) 478 F.2d 562, 571; *In re Complex Asbestos Litigation, supra,* 232 Cal.App.3d at pp. 584, 593 [trial court found "reasonable probability" that confidential information was disclosed or used, presuming use once access to information was proven].)

Generally, courts have held that a party's interest in not having confidential information used unfairly against it and the integrity of the judicial process outweigh a litigant's choice of counsel. (See *Hull, supra,* 513 F.2d at p. 572; *NCK Org'n Ltd. v. Bregman, supra,* 542 F.2d at pp. 134-135; *Williams v. Trans World Airlines, Inc., supra,* 588 F.Supp. at p. 1046.) Our Supreme Court has agreed that these ethical concerns prevail over expediency and a litigant's choice of counsel. (*Comden v. Superior Court* (1978) 20 Cal.3d 906, 915 [145 Cal.Rptr. 9, 576 P.2d 971, 5 A.L.R.4th 562].)

I acknowledge that disqualification should not result from every situation in which counsel had access to an opposing party's confidential information. For example, there are occasions in which inadvertent access by an attorney to the opposing party's confidential information does not, and should not, result in disqualification of the attorney. (*State Comp. Ins. Fund v. WPS, Inc.* (1999) 70 Cal.App.4th 644 [82 Cal.Rptr.2d 799] [inadvertent disclosure of attorney-client privileged documents during discovery].)

Here, plaintiff's attorney, Traylor, met with an adverse party's current employee, Brockett, who worked in the defendant's legal department and who had intentionally accessed confidential information about plaintiff's lawsuit. The subject of the conversation between Traylor and Brockett involved the same subject as was involved in Neal's case—Health Net's employment practices. Under these circumstances, mere access should be sufficient to at least give the trial judge discretion to order disqualification. (See *Triple A Machine Shop, Inc. v. State of California* (1989) 213 Cal.App.3d 131, 144 [261 Cal.Rptr. 493] ["Nor is respondent without remedy if appellants inadvertently or improperly obtain access to privileged information. If opposing counsel's conduct is sufficiently egregious, the court may disqualify him or her from further participation in the case"].)

I believe the law ought to be that access to an opposing party's confidential information without proof of actual knowledge of the confidential information, can, in the discretion of the trial court, be a basis for disqualification of counsel—at least in situations such as the instant case. The trial court is in the best position to determine whether the access is such that the integrity of the judicial process would be compromised absent disqualification.

A petition for a rehearing was denied August 19, 2002, and respondents' petition for review by the Supreme Court was denied October 30, 2002.