Filed 2/27/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

ACACIA PATENT ACQUISITION, LLC
et al.,

    Petitioners,

      v.

THE SUPERIOR COURT OF ORANGE
COUNTY,

    Respondent;

CHITRANJAN N. REDDY,

    Real Party in Interest.

G050226

(Super. Ct. No. 30-2013-00633328)

O P I N I O N

Original proceedings; petition for a writ of mandate and/or prohibition to challenge an order of the Superior Court of Orange County, Frederick P. Aguirre, Judge. Petition granted, writ issued.

Corbett, Steelman & Specter, Richard B. Specter, Diane L. Ellis; Stradling Yocca Carlson & Rauth, Marc J. Schneider, and Douglas Q. Hahn for Petitioners.

AlvaradoSmith, Marc D. Alexander, William M. Hensley; Law Offices of Dawn Ceizler and Dawn Marie Ceizler for Real Party in Interest.

\* \* \*

Petitioners seek the disqualification of the law firm of AlvaradoSmith, which: (1) previously represented another law firm in an attorney fee dispute; and (2) in this case, represents an expert seeking consulting fees arising out of the same underlying litigation as the attorney fee dispute. We issued a stay order and order to show cause. We now conclude AlvaradoSmith's wide-ranging access to privileged information in the first representation and the substantial relationship between the two matters requires the disqualification of AlvaradoSmith. We therefore grant writ relief countermanding the respondent court's contrary order.

## FACTS

Matter No. 1: Petitioner Shared Memory Graphics LLC (SM Graphics) hired the law firm of Floyd & Buss in May 2009 to pursue patent infringement litigation against a list of leading electronics firms. Matter No. 1 commenced in July 2009 in Arkansas, but was subsequently transferred to the United States District Court for the Northern District of California. The SM Graphics retention agreement covered "litigation activities with respect to" 14 patents. The record is unclear, however, as to whether all 14 of these patents were actually at issue in Matter No. 1, or if only two of the 14 patents were the focus of Matter No. 1.[1] In March 2011, SM Graphics and related

---

[1] The petition defines the SM Graphics patents as United States Patent Nos. 5,712,664 and 6,081,279, and indicates these two patents were asserted in Matter No. 1. The petition does not actually state, however, that the other 12 patents in the SM

2

entities obtained a cash settlement (totaling approximately $45 million) from Samsung (one of the defendants in Matter No. 1) as part of a combined licensing and settlement agreement encompassing not only the patents at issue in Matter No. 1, but also numerous other patents owned by SM Graphics' affiliates. Floyd & Buss acted as counsel for SM Graphics until at least May 2011, logging more than 8,000 billable hours. The record is silent as to what role, if any, Floyd & Buss actually played in the settlement negotiations with Samsung.

Matter No. 2: Floyd & Buss hired AlvaradoSmith in 2012 to arbitrate its claim for attorney fees against SM Graphics. Floyd & Buss alleged that SM Graphics underestimated the importance of the patents at issue in Matter No. 1 to the $45 million settlement, thereby reducing the amount owed to Floyd & Buss pursuant to a contingency agreement. Floyd & Buss obtained a cash payment of $3,501,000 from SM Graphics to settle this dispute; the arbitration was dismissed on November 12, 2013.

Matter No. 3 (the instant action): Plaintiff (and real party in interest to this proceeding) Chitranjan N. Reddy sued defendants (and petitioners in this proceeding) SM Graphics and Acacia Patent Acquisition, LLC (Acacia Patent). Reddy claims defendants are alter egos of each other with regard to the allegations at issue. Reddy's allegations are similar to those made by Floyd & Buss in Matter No. 2. Reddy was retained in March 2009 by Acacia Patent to perform expert consulting work relating to United States Patent Nos. 5,712,664 and 6,081,279, i.e., two of the patents owned by SM Graphics that were ultimately made the subject of the litigation in Matter No. 1.[2] The agreement

Graphics retention agreement were not included within the scope of Matter No. 1.

[2] According to Reddy's operative complaint, he was the inventor of these patents, which he sold to Acacia Patent. The agreement required Reddy to be available for consultation on all matters related to these patents, to provide expert analysis of any reports or opinions provided by others concerning the patents, and to provide testimony when necessary in any litigation concerning the patents.

(styled a "Consulting Expert and Common Interest Agreement") stated Reddy was entitled to 11 percent of the "Net Proceeds" of the "licensing, enforcement or sale" of the two patents. Reddy claims Acacia Patent and SM Graphics manipulated the settlement from Samsung to allocate an artificially low amount to the patents upon which Reddy provided his services. This resulted in a lower proposed payout to Reddy pursuant to his contingency agreement. Specifically, defendants allotted $1.5 million out of the $45 million to SM Graphics, resulting in $93,289.59 being offered as payment to Reddy after the deduction of alleged expenses.[3]

Reddy's operative complaint includes causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, quantum meruit, an accounting, and violation of Business and Professions Code section 17200 et seq. Reddy asserts that defendants "acted with an intent to defraud Plaintiff when they entered into the contingency Consulting . . . Agreement. On information and belief, Defendants intended from the very beginning, but did not disclose to Plaintiff, that they would allocate the proceeds of any global settlement in a manner that favored Acacia [Patent's] and its other affiliates' interests to the detriment of Plaintiff by allocating settlement funds to multiple . . . related entities to avoid payment of the full contingency fees due." Matter No. 3 was filed in San Luis Obispo County by Attorney Dawn Ceizler, a sole practitioner. But attorneys from AlvaradoSmith associated in as cocounsel after venue was transferred to Orange County and their successful representation of Floyd & Buss in Matter No. 2 ended.

Acacia Patent and SM Graphics promptly moved to disqualify AlvaradoSmith in Matter No. 3, citing AlvaradoSmith's access in Matter No. 2 to large quantities of confidential documents that would ordinarily be protected by the attorney-

_____

[3] Again, it is unclear whether Matter No. 1 concerned more than the two Reddy patents, and whether the $1.5 million allotted to SM Graphics is entirely attributable to the two Reddy patents.

4

client privilege and/or work product doctrine. Supporting declarations amply demonstrated that AlvaradoSmith had access to thousands of privileged documents produced during discovery in Matter No. 2. Indeed, defendants represent in their petition that "AlvaradoSmith obtained all of the [Floyd & Buss] files from" Matter No. 1. Work product prepared by Floyd & Buss in Matter No. 1 included a valuation of the claims against Samsung. Moreover, Reddy's consulting agreement was drafted by Floyd & Buss, and privileged communications concerning Reddy's consulting agreement were produced in discovery in Matter No. 2. A list of documents designated by Floyd & Buss for use at the arbitration included privileged communications and work product. Defendants' moving papers, however, did not describe the precise contents of particular documents.

In opposing the motion, AlvaradoSmith Attorney Marc Alexander declared that AlvaradoSmith abided by three separate protective orders governing confidential documents to which it had access during the arbitration in Matter No. 2. At the conclusion of Matter No. 2, AlvaradoSmith returned or destroyed confidential documents in its possession.

The court denied the motion, reasoning: (1) AlvaradoSmith's representation of Reddy was "not adverse, in the traditional sense," to its representation of Floyd & Buss; (2) no improper acquisition of confidential information occurred in Matter No. 2; (3) protective orders required the return of all confidential documents at the end of Matter No. 2; (4) there is no evidence suggesting AlvaradoSmith violated the protective orders; and (5) mere exposure to confidential documents is insufficient to disqualify counsel. The court commented at the hearing, "I just don't see that the privileged information that they may have come into knowledge of, . . . they no longer retained the files, so to retain that in their memory intact, [it would be] pretty difficult, I would imagine."

5

"Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion. [Citations.] If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied findings supported by substantial evidence. [Citations.] When substantial evidence supports the trial court's factual findings, the appellate court reviews the conclusions based on those findings for abuse of discretion. [Citation.] However, the trial court's discretion is limited by the applicable legal principles." (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143-1144.)

The court's explicit factual findings are supported by substantial evidence and the court's chain of legal reasoning is largely sound. But we conclude the court erred and AlvaradoSmith must be disqualified based on the unique circumstances inherent to the representation of attorneys against their former clients (such as occurred here in Matter No. 2) and the substantial relationship between Matters No. 2 and 3.

*Successive Representation Conflicts Governed by "Substantially Related" Standard*

"Preserving confidentiality of communications between attorney and client is fundamental to our legal system. The attorney-client privilege is a hallmark of Anglo-American jurisprudence that furthers the public policy of insuring '"the right of every person to freely and fully confer and confide in one having knowledge of the law, and skilled in its practice, in order that the former may have adequate advice and a proper defense." [Citation.]' [Citation.] One of the basic duties of an attorney is '[t]o maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client.' [Citation.] To protect the confidentiality of the attorney-client relationship, the California Rules of Professional Conduct bar an attorney from accepting 'employment adverse to a client or former client where, by reason of the representation of

6

the client or former client, the [attorney] has obtained confidential information material to the employment except with the informed written consent of the client or former client.'" (*In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572, 586-587.)

"For these reasons, an attorney will be disqualified from representing a client against a former client when there is a substantial relationship between the two representations. [Citations.] When a substantial relationship exists, the courts presume the attorney possesses confidential information of the former client material to the present representation." (*In re Complex Asbestos Litigation*, *supra*, 232 Cal.App.3d at p. 587.)

In assessing whether there is a "substantial relationship" between two matters, courts "should 'focus on the similarities between the two factual situations, the legal questions posed, and the nature and extent of the attorney's involvement with the cases.'" (*H. F. Ahmanson & Co. v. Salomon Brothers, Inc.* (1991) 229 Cal.App.3d 1445, 1455.) "The current matter is substantially related to the earlier matter if: [¶] (1) the current matter involves the work the lawyer performed for the former client; or [¶] (2) there is a substantial risk that representation of the present client will involve the use of information acquired in the course of representing the former client, unless that information has become generally known." (Rest.3d Law Governing Lawyers, § 132.)

Despite Floyd & Buss's duties to preserve the confidentiality of SM Graphics' privileged information, Floyd & Buss was entitled to reveal such information to AlvaradoSmith in Matter No. 2 to the extent necessary to litigate the action. (Evid. Code, § 958 ["There is no privilege under this article as to a communication relevant to an issue of breach, by the lawyer or by the client, of a duty arising out of the lawyer-client relationship"]; *Dietz v. Meisenheimer & Herron* (2009) 177 Cal.App.4th 771, 786 ["An attorney 'can reveal confidences to defend against a malpractice claim or in a fee dispute'"].) But Floyd & Buss would not be entitled to represent a client in litigation against SM Graphics if such litigation were substantially related to Matter No. 1.

7

This is not a traditional successive representation case. The question is not whether Floyd & Buss can represent Reddy. Rather, the question is whether AlvaradoSmith should be disqualified from representing Reddy in Matter No. 3 based on its representation of Floyd & Buss in Matter No. 2. AlvaradoSmith never represented SM Graphics or Acacia Patent. The foregoing discussion does not mention any duty on the part of an attorney to maintain the confidences of a nonclient (let alone a litigation adversary), or any rationale for disqualifying attorneys from a matter based on their non-wrongful exposure to a litigation opponent's privileged information. Viewed in general terms, these notions are seemingly opposed to basic principles of our adversarial system of justice. (See, e.g., *Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 302-304 [disqualification not warranted based on exposure to opposing party's privileged information by own client, who was an attorney suing her former employer for sex discrimination].)

*Some Representations Create Duties of Confidentiality to Nonclients*

There are exceptions, however, to the general rule that an attorney has no duty to preserve the confidences of nonclients. "A conflict of interest is involved if there is a substantial risk that the lawyer's representation of the client would be materially and adversely affected by the . . . *lawyer's duties to* another current client, a former client, or *a third person*." (Rest.3d Law Governing Lawyers, § 121, italics added.) "A conflict of interest can . . . arise because of specific obligations, such as the obligation to hold information confidential, that the lawyer has assumed to a nonclient." (Rest.3d Law Governing Lawyers, § 121, com. d, illus. 9, p. 253.)

When do these obligations and duties to nonclients arise? Can conflicts based on duties to nonclients result in disqualification? Do courts apply the successive representation framework (i.e., the transfer of confidential information is presumed in a

substantially related matter) in these special cases where lawyers have duties of confidentiality to nonclients?

We begin our inquiry into these questions with an examination of two cases highlighted by the parties. (See *Kennedy v. Eldridge* (2011) 201 Cal.App.4th 1197 (*Kennedy*); *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft* (1999) 69 Cal.App.4th 223 (*Morrison*)). Neither is precisely on point. But both feature the disqualification of counsel despite the lack of an adverse representation or attorney misconduct.[4] And both cases endorsed the use of the successive representation framework in addressing disqualification motions brought by nonclients. *Morrison* and *Kennedy* show conflicts can arise in California (and disqualification motions can be granted) based on the conjunction of (1) implicit obligations a lawyer takes on to maintain the confidences of a nonclient received in the course of representing a client, and (2) the unfair advantage that might accrue were such a lawyer to pursue substantially related litigation against the nonclient.

*Kennedy* involved a custody dispute in which the paternal grandfather (an attorney) sought to represent the father (i.e., the attorney's son). (*Kennedy*, *supra*, 201 Cal.App.4th at p. 1200.) The trial court granted the mother's motion to disqualify the paternal grandfather, even though neither he nor his wife (also an attorney) had ever represented the mother. (*Id*. at pp. 1201-1202.) The appellate court held that "an amalgamation of interrelated factors" supported the trial court's exercise of discretion.

---

[4] We are not primarily concerned here with cases in which an attorney commits wrongdoing and is disqualified on that basis. (See, e.g., *Clark v. Superior Court* (2011) 196 Cal.App.4th 37, 41 [lawyer disqualified for receipt and excessive review of opponents privileged documents in violation of ethical duties].) It is conceded for purposes of this proceeding that AlvaradoSmith did not do anything wrong in Matter No. 2 with regard to its possession and handling of defendants' privileged documents. Moreover, there is substantial evidence for the court's finding that AlvaradoSmith complied with all protective orders, which compliance included the return or destruction of all confidential documents obtained in Matter No. 2.

9

(*Id*. at p. 1205.) The first factor was the potential misuse of the mother's confidential information, which the paternal grandparents "may have acquired" during the course of representing the mother's father in a divorce proceeding. (*Id*. at pp. 1205-1206.) The close relationship between the mother and her father caused the court to treat the two individuals as "a single unity for purposes of determining whether an ethical conflict exists." (*Id*. at p. 1208.) *Kennedy* applied the "substantial relationship" test from successive representation doctrine, and concluded "[t]he trial court could reasonably find there was a significant danger that — as a result of its prior involvement in her father's divorce case — the [paternal grandparents'] firm acquired relevant confidential information about [the mother] to which it otherwise would not have had access." (*Id*. at p. 1207.) *Kennedy* noted that the "successive representation model" does not require proof of the receipt of confidential information because such transfer of confidences is presumed. (*Id*. at p. 1208.) Other factors supporting the court's ruling included the possibility that the paternal grandfather would need to testify in the custody dispute (*id*. at p. 1209), as well as the "strong appearance of impropriety" caused by the "multiple and interconnected family entanglements" between the parties and proposed counsel. (*Id*. at p. 1211.)

      *Kennedy* is not particularly apt as authority here because its holding was tethered to messy interfamilial squabbles and was not based solely on the receipt of confidential information. *Kennedy* is also a case in which the trial court disqualified counsel and the appellate court affirmed the disqualification under an abuse of discretion standard. Here, of course, we must decide whether the trial court had discretion to *deny* the motion for disqualification.

      In *Morrison*, a law firm sought to represent a water district in litigation against a construction firm's subsidiary. (*Morrison*, *supra*, 69 Cal.App.4th at pp. 226-228.) The law firm was already working for the construction firm's insurance underwriters; "[i]n its capacity as 'monitoring counsel,' [the law firm] received detailed

10

confidential communications from [the construction firm's] defense counsel concerning the progress of cases and [the construction firm's] potential liability." (*Id*. at p. 227.) The construction firm and its subsidiary moved to disqualify the law firm from representing the water district by way of a motion for preliminary injunction. The trial court granted the motion based on the presumption that the law firm possessed confidential information, and the appellate court affirmed. (*Id*. at pp. 228-229, 253-254.) The construction firm had a "reasonable expectation" that its confidences, transferred to counsel for its insurer, would be maintained. (*Id*. at p. 233.) The law firm's duty to maintain these confidences "stemmed from its client's duty of good faith to an insured, and thus, ultimately, from [the law firm's] loyalty to the underwriters, not [the construction firm]." (*Id*. at p. 234.)[5] *Morrison* applied the "substantial relationship" test from successive representation cases to judge whether the particular confidences received required disqualification, and concluded substantial evidence supported the trial court's disqualification decision. (*Morrison*, at p. 234.)

*Morrison* certainly can be analogized to the facts of this case, though (unlike here) one would not say disqualified counsel in *Morrison* was adverse to the nonclient in both matters. Had the trial court opted to disqualify AlvaradoSmith, *Morrison* would provide powerful support for a conclusion that such an order was within the court's discretion. (See *Morrison*, *supra*, 69 Cal.App.4th at p. 253 ["what may have been a difficult decision for the trial court is ultimately, by virtue of the limited scope of review, not a close one on appeal"].) Like *Kennedy*, however, the different procedural

---

[5] This point is consistent with commentary discussing one doctrinal source for a lawyer's duties to a non-client: "A lawyer might have obligations to persons who were not the lawyer's clients but about whom information was revealed to the lawyer under circumstances obligating the lawyer not to use or disclose the information. Those obligations arise under other law, particularly under the law of agency. For example, a lawyer might incur obligations of confidentiality as the subagent of a principal whom the lawyer's client serves as an agent . . . ." (Rest. 3d Law Governing Lawyers, § 132, com. (g)(ii), p. 384.)

posture in *Morrison* means it cannot be taken as authority for the proposition that we *must* grant relief to Acacia Patent and SM Graphics. Neither of the California cases primarily relied on in the petition provides a clear answer to the question presented.

Consistent with these cases, and somewhat closer to the facts here, *Burkes v. Hales* (Wis. Ct.App. 1991) 478 N.W.2d 37 (*Burkes*) explores an attorney's duties to the clients of the attorney's law firm client. In *Burkes*, Burkes sued Hales and other members of the Wisconsin Investment Board for wrongful discharge from his position as executive director. (*Id*. at p. 38.) The Fox firm represented Burkes and the state Attorney General represented Hales. (*Id*. at p. 39.) While the litigation was pending, a contingent of lawyers at the Fox firm departed, taking Burkes's file with them. (*Ibid*.) The remaining Fox firm partners hired attorney Hurley to represent them in a lawsuit concerning the Fox firm's break up. (*Ibid*.) The Fox firm dispute settled, with the Fox firm retaining a financial interest in Burke's action as part of the settlement. (*Ibid*.) "At about the same time, the attorney general . . . withdrew . . . and the governor appointed Hurley as special counsel to represent Hales." (*Ibid*.) The trial court granted Burkes's disqualification motion and the appellate court affirmed the court's exercise of discretion. (*Id*. at pp. 39, 43.)

*Burkes* first held that Hurley had an implied fiduciary duty to the Fox firm's "clients whose files are part and parcel of the intrafirm litigation." (*Burkes*, *supra*, 478 N.W.2d at p. 41.) "We have no doubt that, as Burkes's attorney, the Fox firm had a fiduciary duty to him. And we agree with the trial court that Hurley, once retained by the Fox firm, undertook a similar duty and became bound by the same proscriptions as the firm itself with regard to Burkes." (*Ibid*., fn. omitted.) *Burkes* then held there was a substantial relationship between the two representations because one of Hurley's tasks in the Fox firm litigation was to protect the Fox firm's interest in the *Burkes* litigation. (*Id*. at p. 42.) The court rejected Hurley's argument that he could "avoid disqualification by proving that no confidences were actually shared." (*Ibid*.) "The test is whether the

12

lawyer 'could have obtained' confidential information in the first representation that would have been relevant in the second; whether such information actually was obtained and, if so, whether it actually was used against the former client is irrelevant." (*Ibid.*)

In sum, disqualifying conflicts with nonclients can arise as a result of an attorney-client relationship. If an attorney is deemed to have a duty of confidentiality to a nonclient arising out of such a past representation, courts apply the substantial relationship test from successive representation doctrine to determine whether to disqualify counsel in a case against the nonclient.

*Prior Representation of Attorney Parties against Their Own Clients*

California case law does not discuss the precise issue before us — whether a law firm's representation of a lawyer in a fee dispute results in a disqualifying conflict of interest when the law firm opposes the fee dispute defendant in another matter. This fact pattern includes elements of cases like *Morrison* and *Burkes* (i.e., the assumption of a client's duties of confidentiality to a nonclient may provide grounds for disqualification in a subsequent matter against the nonclient). But a wildcard is added to the mix: the supposed duty of confidentiality here would be owed to a party that was adverse to AlvaradoSmith's clients in both the prior and subsequent litigation.

A limited universe of out-of-state cases has addressed the prospect of a duty of confidentiality to a litigation adversary arising by way of representing a law firm against that adversary in a different action. Several courts have disqualified attorneys for simultaneously representing a nonclient's litigation opponent and the nonclient's former law firm in a malpractice action arising out of the same litigation. (*Frye v. Ironstone Bank* (Fla. Ct.App. 2011) 69 So.3d 1046; *Adelman v. Adelman* (Fla. Ct.App. 1990) 561 So.2d 671; *Greig v. Macy's Northeast* (N.J.Dist.Ct. 1998) 1 F.Supp.2d 397.) Of course, if the malpractice case is not substantially related to the other matter and there is no specific showing that pertinent privileged information was communicated,

13

disqualification is not appropriate. (See *Miccosukee Tribe of Indians v. Lehtinen* (Fla. Ct.App. 2013) 114 So.3d 329 [declining to disqualify attorney in malpractice defense case based on speculation he could obtain confidential information to use in other unrelated matters against plaintiff].)

As to fee disputes, several federal courts have rejected the argument that an attorney fee dispute is substantially related, per se, to the litigation in which the fees arose such that disqualification is required. In *T.C. Theatre Corp. v. Warner Bros. Pictures* (S.D.N.Y. 1953) 113 F.Supp. 265, a variety of disqualification motions were brought by defendants in an antitrust case. The basis for the motions was that one of the plaintiff's attorneys, Cooke, previously represented one of the defendants in a substantially related matter brought by the federal government. (*Id*. at pp. 266-271.) The district court granted the motion to disqualify Cooke. (*Id*. at p. 271.) Defendants also sought to disqualify another firm representing the plaintiff in the antitrust case because it represented Cooke in a fee collection action arising out of the prior substantially related government antitrust case. (*Id*. at pp. 271-272.) The court refused to disqualify the firm, observing that "Cooke's right to recovery of additional fees . . . does not depend upon the disclosure of confidential communications, but, rather, upon the nature, extent and importance of the services performed by him. He could enumerate the various conferences with his client without detailing the matters which might have been discussed." (*Ibid*.; *id*. at p. 272 [refusing to assume that Cooke "divulged confidences reposed in him by his former clients simply because he is now engaged in a law suit with them"].)

*Lankler Siffert & Wohl*, *LLP v. Rossi* (S.D.N.Y. 2003) 287 F.Supp.2d 398 was a fee collection action brought by a law firm and various expert witnesses against their former clients. The district court refused to disqualify the law firm from representing itself or the expert witnesses in the fee dispute. (*Id*. at pp. 403-407.) The *Lankler* court rejected the contention that the underlying criminal defense and the fee

14

dispute were substantially related.  (*Id*. at pp. 404-405.)  And the *Lankler* court found insufficient evidence for the proposition that the law firm had been representing defendants in contesting the expert fee amounts with the experts or the defendants' insurance company during the underlying litigation.  (*Id*. at pp. 405-406; see also *Gross Belsky Alonso LLP v. Edelson* (N.D.Cal., May 27, 2009, No. C 08-4666 SBA) 2009 U.S.Dist. Lexis 49260 [refusing to disqualify law firm from representing itself in fee collection action based on argument that matters were substantially related].)

We find these out-of-state authorities persuasive for the general principle of law that a disqualifying conflict can arise, with regard to an adverse non-client, by way of a law firm representing another law firm.  However, consistent with these cases, it does not end the discussion to observe that AlvaradoSmith represented SM Graphics's former attorneys in Matter No. 2 and now seeks to oppose SM Graphics and Acacia Patent in Matter No. 3.  A lawyer representing a law firm in a fee dispute is not automatically disqualified from opposing the defendant client in future litigation, even in future litigation that has some factual nexus with the prior litigation.  Rather, a court must examine (1) whether the first representation resulted in a broad disclosure of the non-client's privileged information (i.e., something beyond the attorney-client retainer agreement and the number of hours worked), and (2) whether a substantial relationship exists between the two matters.  Not every attorney fee dispute results in the law firm plaintiff's counsel receiving broad access to privileged information from the underlying dispute.  Nor will every attorney fee dispute be substantially related to a subsequent action against the same non-client.

*The Circumstances Require the Disqualification of AlvaradoSmith*

We conclude disqualification is necessary under the circumstances of this case.  The court erred because:  (1) SM Graphics' extensive privileged information pertaining to Matter No. 1 was made available to AlvaradoSmith in Matter No. 2; and (2)

15

there is a substantial relationship between Matters No. 2 and No. 3. To the extent findings to the contrary should be implied in our review of the court's order, such findings were an abuse of discretion because they are not supported by substantial evidence.

AlvaradoSmith had access to numerous privileged documents in Matter No. 2 because the nature of the litigation in Matter No. 2 required it. Evidence submitted with defendants' motion to disqualify established the extent of this exposure. Some of these documents pertained to Reddy's consulting agreement and a valuation of the claims against Samsung. This is not a case in which a court could plausibly find that Floyd & Buss refrained from disclosing privileged documents in Matter No. 2 or disclosed only privileged documents narrowly pertaining to the number of hours worked in Matter No. 1.[6]

---

[6] Reddy contends *Neal v. Health Net, Inc.* (2002) 100 Cal.App.4th 831 (*Neal*) supports his position. In *Neal*, an attorney filed a discrimination case on behalf of a former employee (Neal) of the defendant employer. (*Neal*, at p. 834.) Two months later, the same attorney agreed to represent another former employee (Brockett) of the same employer. (*Id*. at pp. 834-836.) Before her employment terminated, Brockett, a legal secretary, had access to employer's legal files and had in fact opened the electronic Neal file, which included "attorney notes and memoranda." (*Ibid.*) Brockett claimed in her declaration that she had accessed this file only to obtain the name of Neal's attorney, and that she did not actually review documents pertinent to Neal's case. (*Id*. at pp. 836-837.) Employer filed a motion to disqualify the attorney in the Neal case based on the theory that he *presumably* had received confidential information from Brockett about the Neal case. (*Id*. at pp. 834-837.) The appellate court reversed the order of disqualification. (*Id*. at p. 850.) There is no "presumption of possession of confidential information" in these circumstances. (*Id*. at p. 841.) And there was no evidence submitted showing that "information, confidential or otherwise, concerning [Neal's] case was given to [the attorney] by Ms. Brockett." (*Id*. at p. 843.)

Referencing *Neal* in the present circumstances is inapt. The disqualification motion in *Neal* was dependent on the *assumption* that Neal's lawyer wrongfully obtained privileged information about Neal's case from his client, Brockett, an accusation denied in declarations filed by Neal's attorney and Brockett. (*Neal*, *supra*, 100 Cal.App.4th at pp. 836, 839, 843.) Moreover, as explained by *Neal* in its canvassing of California law, a lawyer's "mere exposure" to confidential information by an ex-

16

As to substantial similarity, a few differences between Matter No. 2 (the Floyd & Buss arbitration) and Matter No. 3 (Reddy's lawsuit) can be found. There are two separate contingency agreements at issue relating to two separate functions, that of attorney and that of expert consultant. Reddy's work was clearly limited to two patents, while Floyd & Buss agreed to pursue litigation claims regarding 14 patents. Alter ego is pleaded in the instant action with regard to the relationship between Acacia Patent and SM Graphics but not in Matter No. 2. Defenses against an attorney fee collection action and a consultant's fee collection action might differ.[7]

But these differences pale in comparison with the essential similarities between Matters No. 2 and No. 3. Both contingency agreements pertain to the potential recovery in Matter No. 1. Both Floyd & Buss and Reddy allege that SM Graphics (as well as its affiliate, Acacia Patent, in this case) manipulated the settlement in Matter No. 1 to shortchange their recoveries. Relevant issues in both matters include defendants' intent in structuring the contingency agreements (rather than paying hourly fees) and in dividing the proceeds of the Samsung settlement between various affiliates in petitioners' corporate family. The similarity of the legal and factual issues in Matters No. 2 and No. 3 distinguishes the instant action from standard, hourly rate fee dispute cases, which

employee client of a litigation adversary does not provide grounds for disqualification. (*Id*. at p. 843.) The instant case is fundamentally different. It is undisputed that AlvaradoSmith properly accessed SM Graphics's privileged information in the course of litigating a prior matter, bringing this case within the framework of successive representation cases. There is no factual dispute here that AlvaradoSmith extensively reviewed SM Graphics' privileged documents in the ordinary course of representing Floyd & Buss in Matter No. 2. This is not a case in which AlvaradoSmith might or might not have been exposed to SM Graphics' confidential information in a private counseling session with its client.

[7] We decline to consider an issue only hinted at in the petition and elsewhere in the record, to wit, the potential illegality of Reddy's contingency arrangement with Acacia Patent. This issue is not sufficiently briefed to address it on the merits.

17

might not be substantially related to the underlying action or to other fee disputes. Any privileged information Floyd & Buss received with regard to the valuation of the Reddy patents vis-à-vis Samsung, or even more general insights into the internal operations of SM Graphics and its affiliates, are relevant to this action in a way it would not be in a straight fee recovery based on the number of hours worked. The extra issues here (e.g., the alter ego component) do not undermine the similarity of the main question in both matters.[8]

Under these circumstances, it is unnecessary for a party seeking disqualification to pinpoint precise privileged documents as the basis for a potential unfair advantage. Like successive representation cases, the better rule here is to presume the possession of material confidential information and disqualify counsel in a substantially related action. "The conclusive presumption of knowledge of confidential information has been justified as a rule of necessity, 'for it is not within the power of the [party seeking disqualification] to prove what is in the mind of the attorney. Nor should the attorney have to "engage in a subtle evaluation of the extent to which he acquired relevant information in the first representation and of the actual use of that knowledge and information in the subsequent representation."' [Citations.] The conclusive presumption also avoids the ironic result of disclosing the former client's confidences and secrets through an inquiry into the actual state of the lawyer's knowledge and it makes clear the legal profession's intent to preserve the public's trust over its own self-interest." (*H. F. Ahmanson & Co. v. Saloman Brothers, Inc.*, *supra*, 229 Cal.App.3d at p. 1453.)

---

[8] We reject the notion that because Reddy may have been exposed to some of defendants' privileged information in the course of his expert consulting work, there is no problem with allowing AlvaradoSmith to represent both Floyd & Buss and Reddy. It is unreasonable to infer from the record before us that Reddy would have access to privileged documents on all topics, as opposed to information and documents necessary for his expert consulting work.

It was perfectly legitimate for Floyd & Buss, as well as AlvaradoSmith, to use every piece of information available in Matter No. 2, regardless of whether it was subject to the attorney-client privilege or work product protection. The same thing cannot be said about Matter No. 3. It is not viable to suppose AlvaradoSmith can honor its duty to maintain the confidences of Floyd & Buss's client SM Graphics in the course of representing Reddy. Less restrictive alternatives to disqualification, such as protective orders, do not address the fundamental problem with AlvaradoSmith's representation of Reddy. As stated in the petition, "[e]ven the strongest protective order cannot . . . make AlvaradoSmith forget what it has learned or ensure that AlvaradoSmith can remember and distinguish between what was privileged and what was not." [9]

We acknowledge the downside to this result. It is possible that the privileged information to which AlvaradoSmith had access in Matter No. 2 would not provide them with any advantage in this action. It is possible that the disqualification of AlvaradoSmith will serve only as a tactical victory for defendants. It is possible an injustice is being done to both Reddy and AlvaradoSmith by disqualifying Reddy's chosen counsel. But we must subordinate these concerns to the more serious danger of a litigant's privileged information, disclosed to its own attorney (Floyd & Buss) in an earlier matter (Matter No. 1), being used against it. (See *People ex rel. Dept. of*

---

[9] Reddy posits that any theoretical insights that might have been gained from privileged information in Matter No. 2 cannot be of any practical use to AlvaradoSmith in Matter No. 3, because the attorney-client privilege would prevent production of privileged documents or testimony concerning privileged communications. But, to illustrate why this argument is untrue, imagine a privileged, "smoking gun" email exists that would prove Reddy's allegations. Imagine further that this document was reviewed by AlvaradoSmith in the course of Matter No. 2. Just knowing that there is merit to Reddy's allegations would be extremely valuable in crafting litigation strategy and settlement negotiation positions, regardless of whether this particular email could be obtained in discovery or used as an exhibit at trial. Now, perhaps it is unrealistic to postulate a true "smoking gun" in the context of this case. Even so, the essential point holds true: there is litigation value to information, even if that information cannot be directly converted into admissible evidence.

19

*Corporations v. SpeeDee Oil Change Systems, Inc.*, *supra*, 20 Cal.4th at p. 1145 ["The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process"].)

We conclude by noting "our analysis does not mean that there is or should be any broad duty owed by an attorney to an opposing party to maintain that party's confidences in the absence of a prior attorney-client relationship. The imposition of such a duty would be antithetical to our adversary system and would interfere with the attorney's relationship with his or her own clients. The courts have recognized repeatedly that attorneys owe no duty of care to adversaries in litigation or to those with whom their clients deal at arm's length. [Citations.] Instead, we deal here with a prophylactic rule necessary to protect the confidentiality of the attorney-client relationship and the integrity of the judicial system . . . ." (*In re Complex Asbestos Litigation*, *supra*, 232 Cal.App.3d at p. 588.) In the limited realm of cases featuring attorneys as parties opposed to their former clients, lawyers representing the attorney party must avoid participation in substantially related matters, whereby their access to privileged information in the former action would potentially serve as an advantage in the latter. The court did not have discretion to deny the disqualification motion on this record.

## DISPOSITION

Let a peremptory writ of mandate issue directing the court to vacate its order of April 14, 2014 and to enter a new and different order disqualifying AlvaradoSmith from its representation of plaintiff Reddy. The stay order is hereby lifted.

20

The order to show cause is discharged.  Petitioners SM Graphics and Acacia Patent shall recover costs incurred in this writ proceeding.


                              IKOLA, J.

WE CONCUR:


ARONSON, ACTING P. J.


THOMPSON, J.