Filed 5/19/16  Hartman v. Ludlow CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JEFFREY A. HARTMAN, as Trustee, etc., | |
| Plaintiff and Respondent, | G051380 |
| v. | (Super. Ct. No. 30-2014-00723662) |
| KATHELYN A. LUDLOW et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from orders of the Superior Court of Orange County, Kim R. Hubbard, Judge.  Affirmed.

Law Offices of Ray B. Bowen, Jr., and Ray B. Bowen Jr., for Defendants and Appellants.

Sundstedt & Goodman Law Offices, Michael J. Sundstedt and Lani M. Goodman for Plaintiff and Respondent.

\*　　　\*　　　\*

Appellants Kathelyn A. Ludlow, Karen M. Almond, and Robert E. Almond (appellants) are the beneficiaries of a trust established by their mother. Respondent Jeffrey A. Hartman is the trustee of the Stone Family Trust (Stone Trust), a separate trust established by their mother and stepfather, both of whom are now deceased. After Hartman filed a request for instructions and certain orders relating to the Stone Trust in 2014, appellants sought to remove him as trustee.

While those matters were pending, appellants sought to disqualify Hartman's attorneys, Michael J. Sundstedt and Lani M. Goodman of Sundstedt & Goodman Law Offices. They argued the attorneys had a conflict of interest based on Sundstedt's brief consultation with their mother regarding a separate matter in 2003. They also moved for a protective order to delay discovery while the disqualification motion was pending. The trial court denied both motions and awarded Hartman $1,500 in sanctions on the protective order motion for reasons that will become clear below. Appellants filed the instant appeal, and while it was pending, the trial court ruled on the original petitions.

This appeal lacks merit. One of appellants' arguments is that the trial court failed to rule on voluminous objections it filed to declarations by Hartman and Sundstedt in connection with the disqualification motions and protective order. While true, it does not warrant reversal or remand, and appellants fail to offer sound arguments as to why the objections should have been sustained. With respect to the motion to disqualify, we conclude that appellants lack standing, and even if they did have standing, the brief consultation between appellants' mother and Sundstedt in 2003 comes nowhere close to warranting disqualification. Finally, the motion for protective order itself is moot, and the sanctions order is not appealable. Even if the order were appealable, we would uphold it. Accordingly, we affirm the trial court's orders.

2

# I

## FACTS

In 1999, Reginald A. Stone and Judith L. Almond Stone, a married couple who each had children from prior marriages, established the Stone Trust. Hartman, who was their personal attorney, drafted the Stone Trust. In November 2003, Reginald died and Judith became the sole trustee. Per the terms of the Stone Trust, it was split into a Marital Trust and a Bypass Trust. Judith had an unlimited right to withdraw income and principal from the Marital Trust. The Bypass Trust became irrevocable, and Judith was entitled to a limited right to receive income if certain conditions were met, including the complete exhaustion of the Marital Trust.

Judith also maintained her own trust, the Almond Family Trust (Almond Trust). According to appellants, Hartman also drafted this trust in 2004. Judith died in 2013.

Thereafter, Hartman was named successor trustee. In May 2014, he filed an amended petition for instructions and an order directing the trustee of the Almond Trust to convey property to the Stone Trust.[1] The petition alleged, essentially, that after Reginald's death, Judith improperly transferred certain assets from the Bypass Trust to the Almond Trust. It requested an order directing Kathelyn A. Ludlow, one of Judith's children and trustee of the Almond Trust, to convey all assets that belonged to the Stone Trust back to the Bypass Trust.

In June 2014, appellants filed a petition to remove Hartman as trustee (the removal petition), arguing he had violated several provisions of the Probate Code. In August 2014, the trial court decided it would hear both petitions together, with a date

---

[1] We refer to parties with shared surnames by their first names for the ease of the reader. No disrespect is intended. (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475-476, fn. 1.)

for trial eventually set for April 2015. On September 19, Hartman propounded certain discovery to appellants, including special interrogatories and requests for production.

On September 26, appellants filed a motion to disqualify Hartman's attorneys, Sundstedt and Goodman and their law firm, arguing the existence of a conflict of interest. The conflict was purportedly based on an attorney-client relationship between Judith and Sundstedt in August 2003, relating to a conservatorship she was considering for her father.

A letter from Sundstedt to Judith on August 29, 2003, requested information about her father, acts indicating her father's inability to care for himself, witnesses to such acts, and his assets. As to Judith, Sundstedt requested information about her that would demonstrate her ability to act as conservator, anything she knew that would suggest her father opposed conservatorship, and alternatives to conservatorship. The letter also requested any documents she had about her father's finances, and a letter from her father's doctor. The only bill for Sundstedt's services included in the record was for $637.50. It indicated Sundstedt had spoken to Hartman regarding a new conservatorship case and had a 45 minute conference with him regarding the matter. During this same 45 minutes, he also "review[ed] all documentation." The remainder of his time, which was a total of 2.55 hours, was spent "review[ing] file," conducting research, copying Hartman's file, and drafting the letter to Judith. There is no evidence in the record the conservatorship matter proceeded any further. The disqualification motion was set for hearing on November 7.

On October 1, Ray B. Bowen, Jr., appellants' attorney, sent a letter to Hartman and his attorneys stating, without citation to any legal authority, that discovery was stayed until the disqualification motion was decided. Sundstedt replied with a letter rejecting Bowen's position.

On October 8, appellants filed a motion for a protective order seeking to "delay" discovery until the disqualification motion was heard. Appellants did not seek

4

ex parte relief or to shorten time, and accordingly this motion was set for hearing on November 14, after the disqualification motion was scheduled to be heard. According to Hartman, appellants served responses to the discovery requests, albeit by way of blanket objections, before the hearing on the motion.

Hartman opposed both motions. On the motion to disqualify, Hartman argued appellants' lack of standing and the lack of any substantial relationship between Sundstedt and Judith. With respect to the protective order, he argued the motion was untimely, moot, and should be denied on procedural grounds. He sought $2,440 in sanctions against appellants and their attorneys.

Appellants filed replies and also objections to Hartman's and Sundstedt's declarations supporting the opposition to the motion to disqualify and Sundstedt's declaration regarding the protective order. They objected to nearly every sentence on the grounds that it was either "irrelevant" or that the "document speaks for itself." Several objections were on the grounds of hearsay, lack of personal knowledge, "lacks credibility" or that the statement was "incompetent," or "denies due process." In total, they filed 66 objections to the three declarations submitted by Sundstedt and Hartman.

On November 7, the trial court posted a tentative ruling on the motion to disqualify. The court indicated it was inclined to deny the motion because appellants had failed to show they met the substantial relationship test or that the attorneys had confidential information. The court also found a lack of standing by appellants. The court subsequently heard oral argument from both parties and took the matter under submission. In a written order, the court stated the tentative ruling would become final. The court found there was no showing whatsoever of a nexus between the subject matter of the previous and current representation. Additionally, the court indicated it did not

5

find the authority the appellants had offered on the issue of standing to be persuasive. There was no ruling on the evidentiary objections.[2]

At the hearing on the motion for protective order, which was heard separately and after the motion to disqualify, the court informed Bowen that the motion was both procedurally and substantively defective. "The basis for bringing a . . . protective order . . . is when . . . you want to protect a party from unwarranted annoyance, embarrassment, oppression, or undue burden and expense. None of that qualifies on a motion to disqualify counsel. . . . [¶] . . . [¶] . . . The appropriate remedy would have been a temporary stay pending the motion for disqualification." The court also found Bowen's purported attempt to meet and confer before filing the motion insufficient. The court, unsurprisingly, denied the motion and ordered appellants and Bowen to pay sanctions of $1,500.

On January 26, 2015, appellants filed a notice of appeal from 1) the denial of their motion for disqualification, 2) the denial of their motion for protective order, and 3) the order stating the court would not consider evidentiary objections on the motion to disqualify.

After an unsuccessful attempt to obtain a writ of supersedeas in this court to delay hearing on the petitions and overturn the court's rulings, the matters were heard by the trial court. On May 15, 2015,[3] the court denied appellants' petition to remove the trustee, and granted in part and denied in part Hartman's petition. We need not go into further detail with respect to the court's order on the petitions as it is of no import to this appeal.

---

[2] Subsequently, due to an apparent request by appellants, the court stated it had not considered the evidentiary objections due to a policy not to do so on motions that were not dispositive.

[3] Appellant's second motion to augment the record to include this order is hereby granted.

II

DISCUSSION

*A. Evidentiary Objections*

Appellants argue the trial court erred by failing to rule on their voluminous evidentiary objections to the motion to disqualify and on the protective order. Appellants cite *Reid v. Google, Inc.* (2010) 50 Cal.4th 512 (*Reid*) and argue the failure to rule on their objections requires the rulings on both motions to be vacated and remanded with directions for the trial court to rule on each objection.

Appellants are incorrect. *Reid* holds that the trial court's failure to rule on evidentiary objections in summary judgment proceedings preserves those objections on appeal. (*Reid, supra,* 50 Cal.4th at p. 532 ["If the trial court fails to rule, the objections are preserved on appeal"].) It nowhere states the trial court's substantive ruling must automatically be reversed on appeal or remanded to the trial court to consider the objections.[4]

The only argument appellants offer on appeal[5] as to why the objections should have been sustained is "the contents of the declarations are attempts to unduly influence the trial judge and if read by the trial court may require recusal due to the inadmissibility of their contents and their highly prejudicial nature in favor of Hartman and against Appellants."

---

[4] What *Reid* does expressly state is: "We recognize that it has become common practice for litigants to flood the trial courts with inconsequential written evidentiary objections, without focusing on those that are critical." (*Reid, supra,* 50 Cal.4th at p. 532.) Such is precisely the case here.

[5] Hartman argues that *Reid*'s requirement that the trial court rule on all evidentiary objections does not apply to nondispositive motions such as those at issue here. While this is an interesting argument, we need not consider it, as appellants have failed to offer meritorious reasons why their objections should be sustained in any event.

7

None of Sundstedt's statements in the declarations on either motion were objected to on this ground. Only Hartman's statements on the motion to disqualify were. Some of the statements which appellants believe would unfairly taint the trial judge in Hartman's favor include: "I have been a practicing attorney licensed by the California State Bar since 1975." Other such statements include Hartman's educational and professional background, including his license as a CPA, his receipt of an LLM, his prior background as a trustee, and his experience sitting pro tempore in mandatory settlement conferences. Such statements are, of course, common in attorney declarations, and they are at least minimally relevant to establish the credibility of the declarant. Therefore, any objection as to relevance is overruled. As for appellant's contention that the trial court would immediately be swayed to Hartman's side by such information, this is not only pure speculation on appellant's part but also a bit silly. The trial judge is an experienced professional quite capable of separating the wheat of a declaration from the chaff without being unduly swayed by professional credentials or experience.

With respect to other objections, which appellants fail to discuss in their briefs, any argument is waived. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.) Appellants have failed to show any reason either order should be overturned based on the court's failure to rule on their evidentiary objections.

## B. *Motion to Disqualify*

### 1. *Standard of Review and Relevant Legal Principles*

"Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion. [Citations.] If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied findings supported by substantial evidence. [Citations.] When substantial evidence supports the trial court's factual findings, the appellate court reviews the conclusions based on those findings for abuse of discretion. [Citation.] However, the trial court's

discretion is limited by the applicable legal principles.  [Citation.]  Thus, where there are no material disputed factual issues, the appellate court reviews the trial court's determination as a question of law.  [Citation.]"  (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143-1144.)

"A trial court's authority to disqualify an attorney derives from the power inherent in every court '[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.'  [Citations.]"  (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*, *supra*, 20 Cal.4th at p. 1145.)

"A disqualification motion involves a conflict between a client's right to counsel of his or her choice, on the one hand, and the need to maintain ethical standards of professional responsibility, on the other.  [Citation.]  Although disqualification necessarily impinges on a litigant's right to counsel of his or her choice, the decision on a disqualification motion 'involves more than just the interests of the parties.'  [Citation.]  When ruling on a disqualification motion, '[t]he paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar.  The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process.'  [Citations.]"  (*Clark v. Superior Court* (2011) 196 Cal.App.4th 37, 47-48.)

    *2.  Standing*

    "Standing generally requires that the plaintiff be able to allege injury, that is, an invasion of a legally protected interest.  [Citation.]  A 'standing' requirement is implicit in disqualification motions.  Generally, before the disqualification of an attorney is proper, the complaining party must have or must have had an attorney-client relationship with that attorney.  [Citation.]"  (*Great Lakes Construction, Inc. v. Burman* (2010) 186 Cal.App.4th 1347, 1356.)  The party seeking disqualification has the burden

9

to establish the existence of an attorney-client relationship. *(Shen v. Miller* (2012) 212 Cal.App.4th 48, 56-57.)

When the moving party lacks an attorney-client relationship, "some sort of confidential or fiduciary relationship" may be sufficient. (*Dino v. Pelayo* (2006) 145 Cal.App.4th 347, 353 [where actual or potential disclosure of confidential information is at issue].) Nonclients seeking attorney disqualification "must meet [these] stringent standing requirements" by demonstrating "harm arising from a legally cognizable interest which is concrete and particularized, not hypothetical." (*Great Lakes Construction, Inc. v. Burman, supra,* 186 Cal.App.4th at p. 1358.)

In *Kennedy v. Eldridge* (2011) 201 Cal.App.4th 1197 (*Kennedy*), the court held that "'where the ethical breach is "'manifest and glaring'"' and so "infects the litigation in which disqualification is sought that it impacts the moving party's interest in a just and lawful determination of [his or] her claims" [citation], a nonclient might meet the standing requirements to bring a motion to disqualify based upon a third party conflict of interest or other ethical violation.' [Citation.]" (*Id.* at p. 1204.) In *Kennedy,* the question was whether the mother hand standing to move to disqualify an attorney who was the child's paternal grandfather in a paternity dispute between the mother and father. The mother had, at one time, worked at the grandfather's law firm, as did the child's stepmother. (*Id.* at p. 1202.) "[W]e conclude that where an attorney's continued representation threatens an opposing litigant with cognizable injury or would undermine the integrity of the judicial process, the trial court may grant a motion for disqualification, regardless of whether a motion is brought by a present or former client of recused counsel." (*Id.* at p. 1205.)

Appellants argue this case is similar, but they are wrong. They claim that because Ludlow is the trustee of the Almond Trust and the other appellants are beneficiaries and/or the executor of Judith's estate, they automatically have standing. That is not the relevant inquiry. The relevant inquiry, under *Kennedy*, is whether the

10

attorney's representation threatens "cognizable injury or would undermine the integrity of the judicial process." (*Kennedy, supra,* 201 Cal.App.4th at p. 1205.)

Appellants have failed to make such a showing here. This is not a case, like *Kennedy*, where the lives of the lawyer and the litigants were deeply entwined over a period of time and the challenged attorney had access to confidential information about the party seeking disqualification. Here, the record reflects that the only contact between Judith and Sundstedt was a brief consultation in August 2003. August 2003 was prior to Reginald's death in November 2003, and thus before the creation of the Bypass Trust, the Marital Trust, and the Almond Trust. The contact between Sundstedt and Judith was apparently quite limited, and was primarily through Hartman, who had one phone call and one meeting with Sundstedt about Judith's inquiry into a conservatorship for her father. That conservatorship does not present a legal issue related to the present dispute in any way.

Indeed, there is no clear evidence Sundstedt and Judith ever directly spoke with each other. Sundstedt sent Judith a letter, seeking further information about her father and the potential conservatorship. He did not ask for any of Judith's financial information, and he billed a total of $637.50 for his work.

While appellants claim "It is also a fact that [Judith] provided personal information and documents, as the client, to Sundstedt, her attorney, and he used this information to provide legal services for her." This is not established fact. Indeed, the record references appellants cite do not support their contention. The only factual reference is to a filing by Hartman, which stated on information and belief that Sundstedt briefly consulted with him about the potential conservatorship of Judith's father. Hartman "alleges that no communications occurred between [Sundstedt and Judith] other than a brief letter outlining the need for further information and/or documents in order to proceed with obtaining a conservatorship. Finally, no confidential information was disclosed by [Judith to Sundstedt] . . . ." Appellants offer no evidence at all to contradict

11

this, only speculation. There is simply no evidence in the record to establish Judith ever responded to Sundstedt's letter or spoke to him personally.[6]

Appellants would have us read far more into Sundstedt's billing statement than is warranted. The bill reflects that he spent 45 minutes engaged in the following: "Office conference with Jeff Hartman at his office regarding conservatorship case on behalf of client, Judy Almond; review all documentation." At oral argument, appellants claimed that "review all documentation" should be understood to mean that Sundstedt, in 45 minutes that also included a meeting with Hartman, both reviewed and copied Hartman's entire file pertaining to the Stone Trust. This is not only illogical — why would an attorney investigating a conservatorship either need or want to do this at such an early stage of the case — but it also seems unlikely that it could have taken place, along with a meeting, in a mere 45 minutes.

The only other mention of copying a file is in the billing entry from the next day, where Sundstedt spent 1.6 hours. He "[r]eviewed file," conducted "research [on] Los Angeles Court Rules regarding conservatorships," drafted the previously referenced letter to Judith, and he also "cop[ied] Jeff's file." But it does not indicate that this was an entire file relating to the Stone Trust; it could just as easily have been whatever file Hartman started to address Judith's interest in a conservatorship. Appellants have not met their burden to prove otherwise.

Thus, the sum total of the evidence of interaction between Sundstedt and Judith that is *supported by the record* was a brief consultation about a completely unrelated legal matter, which occurred before the creation of the trusts at issue in the

---

[6] In their reply brief, appellants attempt to turn the burden to establish standing on its head by arguing there was no evidence that Judith did not respond to Sundstedt's letter. But the burden is theirs, as the party seeking disqualification, to establish standing, including the underlying facts supporting the contact between Judith and Sundstedt. It is not sufficient to argue, as they do, that the "arguments that [Judith] never responded to the letter by Sundstedt are not credible," when they offer no evidence that she did.

petitions. There is no showing of a manifest conflict or that appellants' interests in the litigation relating to the petitions was or would be harmed in any way. Nor does this brief prior "representation," if one can even call it that, call into question the integrity of the judicial system. Accordingly, appellants have not made the necessary showing to demonstrate standing.

### 3. *Substantial Relationship*

Even if we were to find standing, we would not find that a substantial relationship between Sundstedt and Judith existed that would require Sundstedt's disqualification.

"'"The relation between attorney and client is a fiduciary relation of the very highest character, and binds the attorney to most conscientious fidelity—*uberrima fides*." [Citations.] Among other things, the fiduciary relationship requires that the attorney respect his or her client's confidences. [Citations.] It also means that the attorney has a duty of loyalty to his or her clients. [Citations.]' [Citation.]" (*Cal Pak Delivery, Inc. v. United Parcel Services, Inc.* (1997) 52 Cal.App.4th 1, 11.)

"To protect the confidentiality of the attorney-client relationship, the California Rules of Professional Conduct bar an attorney from accepting 'employment adverse to a client or former client where, by reason of the representation of the client or former client, the [attorney] has obtained confidential information material to the employment except with the informed written consent of the client or former client.' [Citations.]" (*In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572, 586-587.) "For these reasons, an attorney will be disqualified from representing a client against a former client when there is a substantial relationship between the two representations. [Citations.] When a substantial relationship exists, the courts presume the attorney possesses confidential information of the former client material to the present representation." (*Id.* at p. 587.)

13

The substantial relationship test must "'"focus on the similarities between the two factual situations, the legal questions posed, and the nature and extent of the attorney's involvement with the cases."'" [Citation.] 'The current matter is substantially related to the earlier matter if: [¶] (1) the current matter involves the work the lawyer performed for the former client; or [¶] (2) there is a substantial risk that representation of the present client will involve the use of information acquired in the course of representing the former client, unless that information has become generally known.' [Citation.]" (*Acacia Patent Acquisition, LLC v. Superior Court* (2015) 234 Cal.App.4th 1091, 1098-1099.) If there was a substantial relationship, then access to confidential information by the attorney is presumed, and disqualification is mandatory. (*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 283.)

Appellants cite *Fiduciary Trust Internat. of California v. Superior Court* (2013) 218 Cal.App.4th 465 (*Fiduciary Trust*), for the proposition that a substantial relationship exists here. In that case, Raymond Sandler, the lawyer whose disqualification was sought, drafted wills for a married couple named Willet and Betty Brown. Willlet's will included a trust to be established on his death. After they died, a dispute arose regarding the payment of estate and inheritance taxes between Betty's personal representative, on one side, and the trustees of the trust created by Willet's will on the other. The trustees sought to disqualify Sandler from representing Betty's personal representative based on his prior joint representation of Betty and Willet. (*Id.* at p. 470.)

The appellate court agreed the attorney should be disqualified. (*Fiduciary Trust, supra,* 218 Cal.App.4th at p. 470.) The court concluded Sandler's "prior representation of Betty was direct in nature and substantially related to the current tax dispute." (*Id.* at p. 479.) "The evidence produced at the trial court proceedings demonstrates that Sandler initially represented both Betty and Willet regarding their estate plans. In that role, Sandler drafted Willet's and Betty's wills and had

14

communications with them regarding these instruments. It is rational to conclude that, during the course of the representation, Sandler would have explained to Betty the meaning and effect of the significant terms of the wills, including the clause directing that all taxes due upon her death would be paid from the Marital Trust unless 'other adequate provisions shall have been made therefore.' Indeed, it is rational to assume Betty would have had a particular interest in the meaning of this provision, given the significant estate and inheritance taxes that were expected upon her death. *The particular meaning and intent of that clause, in turn, is at the very heart of the current dispute.*" (*Id.* at p. 480, italics added.)

While appellants claim the "*Fiduciary Trust* case is nearly on all fours with our matter," we disagree. Unlike *Fiduciary Trust*, where the attorney had direct, significant contact with the client about the exact subject of the later dispute, here, Sundstedt had a brief consultation with Judith about an entirely different matter. "'[A] "substantial relationship" exists whenever the "subjects" of the prior and the current representations are linked in some rational manner. [Citation.]' [Citation.]" (*Knight v. Ferguson* (2007) 149 Cal.App.4th 1207, 1213.) The prior and current matters in *Fiduciary Trust* were both directly related to the estate instruments left by Willet and Betty. Here, the prior matter is a consultation about a conservatorship for Judith's father. The current matter is a dispute about a trust that did not exist at the time Judith consulted Sundstedt. Not only is there not a "substantial relationship," there is no relationship at all. Accordingly, the trial court correctly decided no substantial relationship exists here.

### 4. Confidential Information

The only other way in which disqualification is appropriate is in situations "'where the former attorney-client relationship was peripheral or attenuated, rather than direct and personal.' [Citation.] In such cases, the court will not presume the attorney received confidential information absent a showing 'the attorney was in a position vis-

15

[à]-vis the client to likely have acquired confidential information material to the current representation.' [Citations.]" (*Fiduciary Trust, supra,* 218 Cal.App.4th at p. 479.) As we alluded to previously, there is no substantial evidence of the sharing of, access to, or likely acquisition of confidential information by Sundstedt.

Even in the highly unlikely event Sundstedt ever saw any documents related to the Stone Trust in 2003, these were not "confidential" with respect to Judith. Any such documents would have been fully available from Hartman as part of the instant case. Further, the information he could have seen at the time had little bearing on the instant case, which involved the purported transfer of assets between the Bypass Trust and the Almond Trust — which had not been created at the time of the 2003 consultation.

In sum, the trial court did not err when it denied the motion to disqualify the attorneys.

## C. *Motion for Protective Order and Sanctions Order*

In its opening brief, appellants also argue the motion for protective order was wrongly denied or should have been continued, because the trial court ruled on the motion before ruling on the evidentiary objections it filed in connection with that motion. We have already rejected any error with respect to the evidentiary objections, and even if we agreed with them, it would not provide grounds for reversal, because the protective order itself was moot.

"'[A] matter is considered moot if, as a result of changed circumstances, its determination . . . will no longer significantly affect the legal relations of the parties. [Citation.]' [Citation.] '"[A]n action which originally was based upon a justifiable controversy cannot be maintained on appeal if all the questions have become moot by subsequent acts or events. . . ." [Citations.]' [Citation.]" (*Carson Citizens for Reform v. Kawagoe* (2009) 178 Cal.App.4th 357, 364.)

16

Even if we were to agree with appellants that the trial court somehow abused its discretion by not granting a protective order[7] – which only sought to delay discovery while the disqualification motion was pending – there is no meaningful relief we can offer. The disqualification motion was decided. The petitions were eventually heard on their merits. A final judgment is apparently pending. Ordering the trial court to grant the protective order now would accomplish nothing. The only issue that is not moot is the question of the $1,500 in sanctions awarded to Hartman upon the denial of the motion, and we must begin that inquiry with the question of whether the sanctions order is appealable.

Appellants, in their opening brief, stated only that the monetary sanctions order could be reviewed at our discretion, citing Code of Civil Procedure section 904.1[8], subdivision (b). That section states a sanctions order of $5,000 or less is only reviewable after entry of final judgment, or in our discretion, as an extraordinary writ.[9] This is not an appeal after a final judgment, and appellants' opening brief offered no argument as to why we should treat the appeal of a $1,500 discovery sanction as an extraordinary writ. We see no reason why the circumstances require us to exercise our discretion in that manner here. (See *Rogers v. Municipal Court* (1988) 197 Cal.App.3d 1314, 1317.)

For the first time in their reply brief, appellants argue that section 906 authorizes us to review "any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party, including, on any appeal from the judgment,

---

[7] Were we to consider each of appellants' arguments on this point in turn, we would find no abuse of discretion.

[8] All further statutory references are to the Code of Civil Procedure.

[9] The parties' reliance on cases that predate the 1993 amendments to section 904.1 is misplaced.

17

any order on motion for a new trial, and may affirm, reverse or modify any judgment or order appealed from and may direct the proper judgment or order to be entered, and may, if necessary or proper, direct a new trial or further proceedings to be had."

What appellants omit, however, is the language immediately preceding their quotation, which states: "*Upon an appeal pursuant to Section 904.1 or 904.2*, the reviewing court may review. . . ." (§ 906, italics added.) As we have already established, this is not an appeal pursuant to section 904.1, which only permits review of sanctions orders exceeding $5,000. Section 904.2 applies only to limited civil cases. Thus, we find this argument has no merit either, and we conclude this is not an appealable order.

Moreover, if we were to decide the issue on its merits, we would certainly uphold the $1,500 sanctions award. Appellants chose the wrong type of motion – a protective order seeking a "delay" rather than a stay – and they went about the wrong way of requesting the relief sought. As soon as it became obvious the motion would not be heard until after the disqualification motion, it was obviously pointless. If appellants truly believed such an order was necessary, they should have sought ex parte relief or brought a motion to shorten time. Instead, they waited and then proceeded with the hearing on the motion after the disqualification motion was denied, wasting everyone's time and resources. We can only conclude this was intended to cause Hartman time and money. The sanctions award was amply justified.

18

III

DISPOSITION

The court's orders are affirmed.  Hartman is entitled to his costs on appeal. If there are any grounds upon which Hartman may seek attorney fees, he may do so in the trial court.


MOORE, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


THOMPSON, J.

19